A93A0951, A93A0952. MOORE v. AMERICAN SUZUKI MOTOR CORPORATION; and vice versa.

(439 SE2d 43)

BEASLEY, Presiding Judge.

This is a continuation of *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (1) (416 SE2d 807) (1992).

Moore, as successor and former chief executive officer and sole shareholder of Tony Moore Buick-Suzuki-Daihatsu, Inc., sued American Suzuki Motor Corporation, seeking compensatory and punitive damages. He alleged that Suzuki breached their contract and violated §§ 10-1-651 and 10-1-653 of the Georgia Motor Vehicle Franchise Practices Act (OCGA § 10-1-620 et seq.) by: (1) arbitrarily refusing to approve the transfer of his franchise, (2) wrongfully terminating his franchise, and (3) refusing to buy back equipment and inventory. Moore demanded a jury trial.

As noted in the prior appeal, after presentation of Moore's case, the trial court granted Suzuki's motion for directed verdict. The court found no evidence that Suzuki had arbitrarily refused to approve transfer of the franchise or terminated it wrongfully or without good cause, because apparently Moore violated the parties' franchise agreement and OCGA § 10-1-653 by not providing prior written notice of his intent to transfer the franchise; because there was evidence that the proposed location of the transferred franchise was in a less favorable market; and because Moore violated the terms of his franchise agreement and OCGA § 10-1-651[1] by dissolving the corporation that held the franchise, by permitting his business license to lapse, and by closing the franchise.

We reversed, holding that there was a conflict in the evidence as to whether Suzuki's refusal to approve transfer of the franchise and its termination of the franchise were arbitrary or for good cause. We held that although Suzuki claims Moore's own evidence shows that he violated the franchise agreement and OCGA § 10-1-653 by not giving timely notice of his intention to transfer the franchise, or that he took action which would warrant termination of the franchise under the franchise agreement and OCGA § 10-1-651, these are jury issues.

At retrial, voir dire of prospective jurors was not reported, by agreement of the parties. After a jury was struck, the remaining members of the venire were excused and the trial was recessed. Prior to making an opening statement at the recommencement of the proceedings the following day, Suzuki's attorney filed a motion under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), and *Edmonson v. Leesville Concrete Co.*, 500 U. S. ____ (111 SC 2077,

---

[1] OCGA § 10-1-651 was amended in 1990 and 1991 following the events in this case. In this opinion, we refer to the former Code section.

114 LE2d 660) (1991). He requested that Moore's attorney provide a racially neutral explanation for having used two of his six peremptory challenges in striking the only two black members of the venire in the retrial of this case. Suzuki's attorney also stated that Moore's attorney had used a peremptory challenge to strike the only black person from the venire at the original trial.

The court opined that this motion was not timely but stated that it would give counsel an opportunity to explain why he struck the two prospective jurors, Mr. Butler and Mr. Livsey. Counsel responded that race was not an issue and that he believed that Ms. Williams, who was on the jury, was a non-Caucasian. With respect to why he struck Mr. Livsey, counsel stated, "I believe the strongest reason was because he worked for a corporation that has its home office in France. And again, that's not — that was one factor. The biggest factor is, I thought [other named jurors] were better jurors better qualified to hear this case. Those are the people that I felt most comfortable with."

With respect to why he struck Mr. Butler, counsel stated, "Again, I just felt like his background was not one of marketing or did not have a real — the educational background that I felt comfortable with as far as this case was concerned. . . . I just didn't feel comfortable with Mr. Butler in the way he responded, other than I thought the other jurors were more of the area that we wished to have review this case, in terms of their training, and experience, and for being business owners, and that sort of thing."

At the close of all the evidence, Suzuki moved for directed verdict, which was denied. The court instructed the jury on the criteria for determining plaintiff's entitlement to punitive damages under both the Tort Reform Act of 1987 (OCGA § 51-12-5.1) and the Motor Vehicle Franchise Practices Act (OCGA § 10-1-623 (b)). The verdict awarded Moore $270,220.13 in compensatory damages based upon the finding that Suzuki's decision to refuse to agree to the proposed sale was arbitrary, that Suzuki did not have good cause to terminate the franchise, and that Moore was entitled to fair and reasonable compensation for supplies, parts, equipment, furnishings and special tools. The jury also found that plaintiff was entitled to punitive damages. Pursuant to OCGA § 51-12-5.1 (d), the trial resumed to resolve the issue of punitive damages. As to this item, the jury awarded $500,000.

The court entered judgment for the compensatory damages but noted in the judgment that OCGA § 10-1-623 (b) states that "the court may award punitive damages." In the final judgment, the court awarded $500,000 in punitive damages, with the caveat that if it is determined that the court and not the jury should set them, $50,000 is awarded.

Suzuki moved for directed verdict, j.n.o.v., or in the alternative, new trial.

The court granted the motion for j.n.o.v. on the issue of whether Suzuki arbitrarily refused to approve transfer of the franchise, on the ground that OCGA § 10-1-653 (a) requires a new motor vehicle dealer to give the franchisor prior written notice of the proposed change in ownership or sale of its principal assets, and at the time the alleged "prior written notice" was delivered to Suzuki the corporate entity which was Suzuki's authorized dealer had been dissolved.

The court also granted Suzuki's motion for j.n.o.v. on the issue of buy-back of inventory and other items, finding that Moore failed to "convey or transfer title and possession" to Suzuki, a condition precedent to recovery under OCGA § 10-1-651 (f).

The court denied the motion in regard to the jury's verdict in favor of Moore for Suzuki's refusal to agree to the proposed sale of the franchise, Suzuki's termination of Moore's franchise without good cause, and the punitive damages award.

Suzuki also asserted as a ground for new trial that a peremptory strike of a potential juror by Moore was based on racial motivations. The court rejected this ground, finding that Moore struck the potential juror because of his employment with a foreign corporation, which is a racially neutral reason. The court also ruled that Suzuki's challenge to the jury selection process was not timely made.

After the record was transmitted to this court, Suzuki requested the trial court conduct a hearing pursuant to OCGA § 5-6-41 (f) to resolve differences between the parties as to what transpired during voir dire so as to make the record conform to the truth. This was done and the court stated that twenty-four individuals were empaneled as prospective jurors; twenty one were Caucasian, and three (Livsey, Butler, and Williams) were African-American; in exercising his six peremptory strikes, plaintiff struck Butler and Livsey; the twelve individuals who were empaneled as jurors to try the case included eleven Caucasians and one African-American, Williams; Freeman, whom Moore struck, conveyed during voir dire that he is director of marketing for Equifax; Williams, who served as a juror, indicated during voir dire that she was employed by a Chinese foreign corporation. The transcript of the hearing and court order were transmitted to this court as a supplemental record.

In Case No. A93A0951, Moore contends that the trial court erred in granting Suzuki's motion for j.n.o.v. as to jury findings that Suzuki arbitrarily refused to approve transfer of the franchise and buy-back of Suzuki items and in substituting its award of punitive damages for that of the jury. In Case No. A93A0952, Suzuki contends that the trial court erred in failing to grant its *Batson* motion, in awarding punitive damages, and in denying its motion for j.n.o.v. in that its

termination of the franchise was justified on statutory and contractual grounds.

1. The court erred in granting Suzuki's motion for j.n.o.v. as to the jury's finding that Suzuki arbitrarily refused to approve transfer of the franchise on the ground that the authorized corporate dealership had been dissolved.

It was expressly held in the prior appeal that there was a conflict in the evidence as to whether Suzuki's refusal to approve transfer of the franchise was arbitrary. 203 Ga. App. at 190 (1). It was specifically noted that one of the grounds upon which the trial court had granted Suzuki's motion for directed verdict was that Moore had violated the terms of the franchise by dissolving the corporation. Id. at 189.

"Any issue that was raised and resolved in the earlier appeal is the law of the case and, notwithstanding appellant's request for reconsideration, is binding. [Cit.]" *King Cotton, Ltd. v. Powers*, 200 Ga. App. 549 (1) (409 SE2d 67) (1991). " 'When a case is brought to this court and the judgment of the trial court is reversed, all questions as to pleadings and the effect of evidence adjudicated by this court are binding as the law of the case on this court and, on a second trial of the case, on the court below, unless additional pleadings and evidence prevail to change such adjudications.' [Cit.]" *Parker v. State*, 76 Ga. App. 238 (2) (45 SE2d 692) (1947).

Although the prior appeal was from the grant of Suzuki's motion for directed verdict and this appeal follows the court's entry of judgment on a jury verdict, there were no additional pleadings or evidence concerning the issues raised, and Suzuki made no contrary showing. For these reasons, the court did not err in denying Suzuki's motion for j.n.o.v. on the question of whether its termination of the franchise was justified.

2. The court erred in granting Suzuki's motion for j.n.o.v. as to the jury's finding that Moore was entitled to recover damages for losses suffered from Suzuki's refusal to repurchase inventory and other items.

Both Moore and one of Suzuki's witnesses testified that Suzuki's offer to purchase these items was in an amount less than that required by state law. Another Suzuki witness testified otherwise.

Former OCGA § 10-1-651 (f) (2) stated that the required compensation shall be paid by the franchisor "within 90 days of the effective date of termination, cancellation, or non-renewal, provided the dealer has clear title to the inventory and other items or is able to convey such title to the franchisor and does convey or transfer title and possession of the inventory and other items to the franchisor."

In the opinion of the trial court, Moore failed to perform a condition precedent to Suzuki's performance by not conveying or transferring title and possession to Suzuki. There was evidence that Suzuki

failed to perform a condition precedent to Moore's performance by refusing to pay the compensation for the items required by OCGA § 10-1-651 (f). A j.n.o.v. was unauthorized because there is evidence to support the verdict. *Maloy v. Planter's Warehouse &c. Co.*, 142 Ga. App. 69, 72 (2) (234 SE2d 807) (1977).

3. The court was authorized to substitute its award of punitive damages for that of the jury.

OCGA § 10-1-623 (b) provides, "If the franchisor engages in aggravated or continued multiple intentional violations of a provision or provisions of this article, the court may award punitive damages in addition to other damages authorized under this part." It thus contemplates an award of punitive damages by the court and not the jury. Compare OCGA § 9-15-14 (f): "An award of reasonable and necessary attorney's fees or expenses of litigation under this Code section shall be determined by the court without a jury. . . ." Compare also OCGA § 51-12-5.1 (d) (2): "It shall . . . be the duty of the trier of fact to set the amount to be awarded [as punitive damages]. . . ." Moreover, the issue of punitive damages should not have been submitted to the jury under OCGA § 51-12-5.1, inasmuch as Moore has not charged Suzuki with commission of a tort.

4. The court did not err in denying Suzuki's *Batson/Edmonson* motion.

Courts must entertain a challenge to a private litigant's racially discriminatory use of peremptory challenges in a civil trial. *Strozier v. Clark*, 206 Ga. App. 85, 86 (2) (424 SE2d 368) (1992). "[A] challenge to the alleged use of racially discriminatory peremptory challenges in a civil trial under *Edmonson* should be raised no later than would preserve the opportunity to correct any violation without resetting the trial." *Calhoun v. Purvis*, 206 Ga. App. 565, 568 (2) (425 SE2d 901) (1992). Here, as in *Calhoun*, "the latest time would have been before the jury selected and the jurors not selected were released." Id.

However, "[a]s in [*State v.*] *Sparks*[, 257 Ga. 97, 98 (355 SE2d 658) (1987)], we will not reject the *Batson/Edmonson* claim as untimely 'because there have been no judicial guidelines regarding the time and manner in which such a claim is to be presented, and because [defendant's] motion in this regard was made relatively promptly in the course of the proceedings. . . .' " Id. Moore's case was tried in August 1992, before the November decision in *Calhoun*. In that case, the jurors selected had been released for the day and the jurors not selected were released altogether. The panel in Moore's case had already been released when he challenged the selection. This being a comparable situation, the issue is addressed.

Under *Batson*, "[t]he [complaining party] has the burden to complete the record to establish a prima facie case with information revealing 'the racial composition of the panel from which the jury was

selected, the racial breakdown of the strikes of both parties, and the racial composition of the resulting jury.' [Cit.]" *Shaw v. State*, 201 Ga. App. 438, 439 (1) (411 SE2d 534) (1991). If a party can establish a prima facie case, the other party must explain his exercise of such challenges and demonstrate that racially neutral criteria prompted their exercise. *Gamble v. State*, 257 Ga. 325 (2) (357 SE2d 792) (1987). The determination of whether plaintiff carried his burden of proving that the disproportionate exclusion of black jurors was not the result of racial animus requires a consideration of counsel's questioning of prospective jurors on voir dire examination, which can be an important factor in determining whether peremptory challenges were exercised in a racially discriminatory fashion. *Gamble v. State*, supra, 257 Ga. at 327-330 (6). "The explanation offered for striking each black juror must be evaluated in light of the explanations offered [by] the [party's] other peremptory strikes, and, as well, in light of the strength of the prima facie case." Id. at 327 (5). The trial court then must determine if a case of purposeful discrimination has been established. *Burgess v. State*, 189 Ga. App. 790, 793 (4) (377 SE2d 543) (1989). The trial court's findings are entitled to great deference and will be affirmed unless clearly erroneous. *Gamble*, supra at 327.

According to the trial court's findings, Moore's attorney utilized one-third or 33.3 percent of his peremptory challenges (two out of six) to remove two-thirds or 66.7 percent of the African-Americans (two out of three) from a venire jury panel in which one-eighth or 12.5 percent (three out of twenty four) were African-Americans. Although this might constitute a prima facie case, it is not a strong one. See *Durham v. State*, 185 Ga. App. 163, 166 (3) (363 SE2d 607) (1987); compare *Randolph v. State*, 203 Ga. App. 115 (3) (416 SE2d 117) (1992). Voir dire examination was not reported. The trial court was aware of all that transpired during voir-dire questioning but we are not. This case, unlike others wherein *Batson* challenges have been upheld, had no racial overtones. Compare *Congdon v. State*, 262 Ga. 683 (424 SE2d 630) (1993); *Ford v. State*, 262 Ga. 558, 560, n. 2 (423 SE2d 245) (1992); *Gamble v. State*, supra.

Under these facts, the trial court's finding that the *Batson* challenge is without merit is not clearly erroneous.

*Judgment in Case No. A93A0951 affirmed in part and reversed in part. Judgment in Case No. A93A0952 affirmed. Cooper and Smith, JJ., concur.*

Decided November 22, 1993 —
Reconsideration denied December 13, 1993 —

*Webb, Tanner & Powell, Anthony O. L. Powell, Ralph L. Taylor*

*III, Robert J. Wilson,* for appellant.

*Alston & Bird, T. Michael Tennant, Andrew M. Gibson,* for appellee.