### A98A0292. JOHNSON v. THE STATE.
(497 SE2d 666)

ELDRIDGE, Judge.

Appellant-defendant Davis Johnson challenges his conviction for violating the Georgia Controlled Substances Act ("GCSA"), OCGA § 16-13-20 et seq. We affirm.

On August 8, 1996, Officers J. D. Huckabey and D. L. Baker were operating in an undercover capacity in the Lynwood Park area of DeKalb County. Earlier in the day, Officer Huckabey had taken $100 (five $20 bills) from the DeKalb County Buy Fund; pursuant to her regular practice, she photocopied each bill for identification purposes.

While driving in Lynwood Park, the officers were flagged down by Elkin Clarke, appellant's co-defendant, who approached the unmarked police vehicle and leaned in the open window. He asked Officer Huckabey if she was "looking for a 20," referring to a $20 piece of crack cocaine. When Officer Huckabey responded affirmatively, Clarke walked over to the defendant, who was standing by himself approximately five feet away. Officer Huckabey observed the defendant hand Clarke some crack cocaine. Clarke immediately walked back to the unmarked police vehicle and gave Huckabey at least one piece of crack cocaine, which later field tested positive for cocaine. Officer Huckabey handed Clarke one of the $20 bills and observed as Clarke walked over and gave it to the defendant. Officer Huckabey then drove away and immediately signaled uniformed officers in the area that a sale had been conducted. The uniformed officers arrived at the scene approximately one minute later and apprehended Clarke and the defendant. The defendant had the $20 bill from the buy fund clenched in his fist; the defendant also possessed approximately $900 in cash. Both individuals were arrested and charged with possession of cocaine with the intent to distribute. Within hours following the arrest, Officers Huckabey and Baker identified the defendant from jail photos to ensure that the other officers had arrested the correct suspects. Officer Huckabey also testified that, as she transported the defendant to the DeKalb County Jail, the defendant told her that "when he gets out that I need to watch myself . . . because we were going to get it when he got out."

The defendant was tried February 18-21, 1997; Clarke was tried

separately. Prior to trial, the defendant filed a motion in limine to exclude from evidence a photostatic copy of the $20 bill from the buy fund, asserting that it violated the best evidence rule, OCGA § 24-5-1; the motion was denied. The defendant also asserted a challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), as to the State's peremptory strikes; the trial court ruled that the defendant failed to establish that the State had a discriminatory intent in executing the strikes. The defendant was convicted of violating the GCSA and was sentenced to forty years, ten to serve. His motion for a new trial was denied, and he appeals. *Held*:

1. In his first enumeration of error, the defendant asserts that the trial court erred in admitting into evidence a photocopy of the "buy money," as opposed to the actual $20 bill, claiming that it violated the best evidence rule, OCGA § 24-5-4 (a). However, the best evidence rule applies only to writings where the terms are material and the contents of the writing are in issue, as in a dispute regarding the contents of a contract, deed, will, search warrant, or prior conviction. See *Bishop v. Kenny*, 266 Ga. 231 (466 SE2d 581) (1996) (rule applies to wills); *Jefferson Pilot &c. Co. v. Prickett*, 176 Ga. App. 810 (338 SE2d 19) (1985); *State v. Mincey*, 167 Ga. App. 850 (308 SE2d 18) (1983). See also *Perkins v. State*, 260 Ga. 292 (392 SE2d 872) (1990); *Springer v. State*, 238 Ga. 81 (230 SE2d 883) (1976); *Munsford v. State*, 235 Ga. 38 (218 SE2d 792) (1975) (best evidence rule has nothing to do with evidence generally); *King v. State*, 209 Ga. App. 529 (433 SE2d 722) (1993); *Shivers v. State*, 188 Ga. App. 744 (374 SE2d 233) (1988); *McCoy v. State*, 185 Ga. App. 221 (363 SE2d 628) (1987).

Currency is not a "writing" under the best evidence rule. Further, there was no dispute in this case regarding the bill's contents, such as an assertion that the bill had been altered. See generally *Springer v. State*, supra at 82. In fact, the defendant did not assert at trial that the photocopy was not an exact replica of the $20 bill from the buy fund or that the bill recovered from his possession was not the same $20 bill, and did not cross-examine the State's witnesses concerning these issues, but asserted only that the original bill should have been admitted as evidence instead of the photocopy.

However, Officer Huckabey testified that she had made a photocopy of the $20 bill used in the drug buy in order to assist her in tracking the bill after the transaction. Therefore, the photocopy was primary evidence supporting the officer's testimony. See *Jacobs v. State*, 207 Ga. App. 714 (429 SE2d 256) (1993). The fact that the officer did not *also* submit as evidence the original $20 bill found in the defendant's possession affects only the weight of her testimony, not the admissibility of the photocopy. Accordingly, the photocopy of the bill was admissible into evidence.

Further, even if the original currency was a "writing" subject to the best evidence rule, the photocopy was admissible under either OCGA § 24-5-4 (a) or § 24-5-26. OCGA § 24-5-4 (a) allows a photocopy of the writing if the "absence [of the original is] satisfactorily accounted for." In this case, the State asserted that the original $20 bill was unavailable because it had been recirculated through the buy fund for subsequent drug sting operations. Unless the county was able to reuse the currency, each bill that became evidence in an illegal drug buy would have had to be locked up in the evidence room for months, so that DeKalb County would have "thousands and thousands" of dollars from the buy fund tied up and out of circulation pending trial. This explanation for the absence of the original $20 bill was sufficient to justify the admission of the photocopy into evidence. See also OCGA § 24-5-25. Alternatively, the photocopy was made in the ordinary course of business and, as such, was admissible under OCGA § 24-5-26.

2. In his second enumeration, the defendant, who is African-American, asserts that the trial court improperly denied his *Batson* challenge regarding three jurors that were allegedly stricken by the State on the basis of race.

The trial court found that the defendant had established a prima facie case of racial discrimination by showing that the State used.five of its six peremptory strikes against African-American jurors. Once a prima facie case of racial discrimination in the use of peremptory strikes is shown, the second step of a *Batson* analysis requires the proponent of the strikes to produce race-neutral, reasonably specific reasons for the strikes. *Jones v. State*, 226 Ga. App. 428, 429 (487 SE2d 62) (1997). Then, in the third step, "the trial court must determine, under the totality of the circumstances, whether the challenger has proven [that the] proffered reasons were merely pretext, and the strike was actually exercised for a racially discriminatory purpose. [Cit.]"[1] Id.; see *Greene v. State*, 266 Ga. 439, 443 (469 SE2d 129)

---

[1] " 'The ultimate burden of persuasion about the racial motivation rests with and never leaves the opponent of the strike.' " *Holt v. Scott*, 226 Ga. App. 812, 816 (487 SE2d 657) (1997). Such burden may be satisfied in numerous ways, such as the trial court's disbelief of the explanations, together with elements of the prima facie case; the trial court's knowledge of the community in relation to the explanations offered; or the trial court's knowledge of the one utilizing the strike in relation to the explanations offered. *St. Mary's Honor Ctr. v. Hicks*, 509 U. S. 502 (113 SC 2742, 125 LE2d 407) (1993); *Hernandez v. New York*, 500 U. S. 352 (111 SC 1859, 114 LE2d 395) (1991); *Hairston v. Gainesville Sun Publishing Co.*, 9 F3d 913, 914 (11th Cir. 1993). Thus, while additional argument to the trial court may (or may not) aid the opponent of the strike's persuasive burden, the opponent is not required to introduce evidence beyond that already offered to establish the prima facie case. See *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995) (following the prima facie showing and subsequent reasons for exercising strikes, the trial court, without explanation, overruled the *Batson* challenge);.*St. Mary's Honor Ctr. v. Hicks*, supra at 125 LE2d 418 (factfinder's disbelief of

(1996) (once an explanation for the strike has been proffered, "the inquiry [is] properly framed for the trial court's determination"). "A trial court's determination of a *Batson* challenge rests largely upon assessment of the attorney's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous." (Citation and punctuation omitted.) *Holt v. Scott*, 226 Ga. App. 812, 816 (487 SE2d 657) (1997); see also *Purkett v. Elem*, supra; *Johnson v. State*, 266 Ga. 775, 776-777 (4) (470 SE2d 637) (1996); *Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996); *Jones v. State*, supra at 430; *Scott v. State*, 225 Ga. App. 729, 730-731 (484 SE2d 780) (1997); see also *Whatley v. State*, 266 Ga. 568, 570 (3) (468 SE2d 751) (1996); *Gardner v. State*, 225 Ga. App. 427, 431-432 (483 SE2d 912) (1997), citing *Purkett v. Elem*, supra; *Moore v. American Suzuki Motor Corp.*, 211 Ga. App. 337, 342 (439 SE2d 43) (1993) (deferring to the trial court's determinations after recognizing that, in the absence of a transcript of jury voir dire, the "trial court was aware of all that transpired during voir-dire questioning but we are not").

In this case, according to the State,[2] juror no. 3 was a childcare worker who had only recently become employed outside the home and who lacked any other employment history. The State argued that it was looking for jurors with significant, stable work and educational backgrounds. The trial court accepted this as being a sufficient race-neutral reason for the strike. In response, the defendant asserted that the State had failed to strike similarly situated Caucasian jurors. However, the State showed that the other jurors at issue had significant work histories, regardless of their current employment status. The trial court found that the defendant had failed to prove purposeful racial discrimination as to juror no. 3, and such determination was not clearly erroneous. See *Robert v. State*, 227 Ga. App. 26 (488 SE2d 105) (1997); *Scott v. State*, supra at 731; see also *Freeman v. State*, 268 Ga. 181, 182 (486 SE2d 161) (1997); *Holt v. Scott*, supra at 817 (holding that "a *Batson* violation does not exist simply because one or more of [the] racially-neutral reasons was not used by the

reasons put forward by defendant, together with elements of prima facie case, suffice to show intentional discrimination); *Batson v. Kentucky*, supra at 85 (once a prima facie showing is made, the trial court undertakes inquiry into such evidence of intent to discriminate as may be available); *Hairston v. Gainesville Sun Publishing Co.*, supra at 913 (prima facie case sufficient to establish pretext). In the absence of further argument from the opponent of the strike, the trial court decides whether the proffered explanations are "strong enough to overcome the . . . prima facie case," as the third step of the analysis. *Lingo v. State*, 263 Ga. 664, 665 (437 SE2d 463) (1993); *Ford v. State*, 262 Ga. 558, 559 (423 SE2d 245) (1992).

[2] The defendant did not file a transcript of the voir dire of the jury pool. Accordingly, this Court must presume that the State's characterization in the record of the juror's responses is accurate.

attorney to strike potential jurors of another race or gender").

Juror no. 29 was a Hispanic female who had started a new job a week before, who was in the middle of job training, and who expressed concern about missing work due to jury duty. According to the State, the juror expressed that it would be difficult to concentrate on the evidence because of her job concerns. The trial court found that this was a race-neutral reason for the strike. The defendant responded by noting that the juror was well-educated and intelligent, and that she had indicated that she could be fair and impartial if chosen as a juror. However, the trial court found that the defendant had failed to prove purposeful discrimination and rejected the *Batson* challenge as to this juror; such finding was not clearly erroneous.

As to juror no. 31, the State argued that she was an unemployed, 24-year-old, pregnant, single parent of two small children with no significant work history and no apparent stable home life. In addition, the State asserted that pregnant jurors as a group are "very nurturing and sympathetic towards defendants." The trial court accepted these reasons as race-neutral. The defendant responded by arguing that the State's preference for "professional women" automatically discriminated against African-American women; however, the trial court found that this argument supported only the prima facie case, and did not show purposeful discrimination. Accordingly, the trial court rejected the *Batson* challenge as to this juror. Although we agree with the defendant's argument to this Court that striking a juror solely because of her pregnancy would violate equal protection principles, we uphold the trial court's acceptance of the other race-neutral reasons for this strike. Further, the trial court's determination that the defendant had failed to prove purposeful discrimination was not clearly erroneous.

3. The defendant next asserts that the trial court erred in refusing to admit a certified copy of the result of the preliminary hearing, which was being offered as impeachment evidence against Officer Huckabey. The defendant claims that he was entitled to use the certified copy to establish that the officer's memory of the facts of this case was questionable.

Charges against the defendant were dropped following the preliminary hearing, but the defendant was subsequently indicted by a grand jury for this offense. During trial, the defendant questioned Officer Huckabey about whether she was "happy" with the results of the preliminary hearing; she testified that she was happy because the case was bound over to the superior court. The defendant then showed the officer a certified copy of the results of the hearing, and the officer admitted that the case was dismissed by the magistrate court. The defendant then attempted to admit into evidence the certified copy of the dismissal, and the State objected to the evidence as

irrelevant. The trial court agreed and refused to admit the certified copy.

" '[W]hile a witness may be impeached on a collateral issue which is indirectly material to the issue in the case, a witness may not be impeached because of a discrepancy as to a wholly immaterial matter.' " (Citations omitted.) *Gilbert v. State*, 159 Ga. App. 326, 327 (2) (283 SE2d 361) (1981); see also *Haynes v. State*, 180 Ga. App. 202 (349 SE2d 180) (1986). Evidence of the prior disposition of the case in the magistrate court is irrelevant to the question of the defendant's guilt or innocence, particularly when, as in this case, the defendant is subsequently indicted in the superior court. See *Boyce v. State*, 184 Ga. App. 578 (362 SE2d 229) (1987); see also *Beckum v. State*, 156 Ga. App. 484, 486 (274 SE2d 829) (1980). Further, in this case, the defendant was allowed to elicit testimony during the cross-examination of Officer Huckabey that the case had, in fact, been dismissed by the magistrate court. Accordingly, there was no error in the trial court's refusal to admit the certified copy of the results of the preliminary hearing.

4. Finally, the defendant asserts that the evidence was purely circumstantial, failed to exclude every other reasonable hypothesis that was inconsistent with his guilt, and was insufficient to support the verdict. We disagree.

Upon review of a conviction, the defendant no longer has the benefit of the presumption of innocence, and the evidence is viewed in a light most favorable to the jury's verdict. *Mason v. State*, 199 Ga. App. 691, 692 (405 SE2d 747) (1991). In this case, the evidence included testimony by Officers Huckabey and Baker which identified the defendant as the person who was standing approximately five feet from their car during the drug buy, who handed the crack cocaine to Clarke, and who accepted the $20 bill from the buy fund from Clarke. Arresting Officer Mitchum testified that the defendant had the same $20 bill in his clenched fist when he was arrested moments after the drug buy. Such testimony is direct evidence of the defendant's participation in this crime. Even though contradictory evidence was elicited by the defense, this Court does not weigh evidence upon review but is limited to considering whether the evidence is sufficient for a rational trier of fact to find that the defendant is guilty beyond a reasonable doubt of the crime for which he is charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence was sufficient to find that the defendant was guilty of a violation of the Georgia Controlled Substances Act.

*Judgment affirmed. McMurray, P. J., concurs. Blackburn, J., concurs in the judgment only.*

Decided March 11, 1998.

*Paul J. McCord*, for appellant.

*J. Tom Morgan, District Attorney, Carol M. Kayser, Robert M. Coker, Assistant District Attorneys*, for appellee.