## A96A2480. NORFOLK SOUTHERN RAILWAY COMPANY v. PERKINS.
### (481 SE2d 545)

RUFFIN, Judge.

In this Federal Employers' Liability Act case, Norfolk Southern Railway Company ("Norfolk Southern") appeals from a jury verdict rendered in favor of George Perkins. Norfolk Southern contends the trial court erred in four respects: (1) denying its *Batson* motion, (2) failing to require Perkins to calculate his wage loss based on net wages minus railroad retirement taxes, (3) denying its motion for partial directed verdict relating to Perkins' failure to prove the extent to which his prior injuries were aggravated by the incident at issue, and (4) admitting the expert opinion testimony of Perkins' economist, Dr. Fred Johnson, despite the fact that his opinions were withheld from Norfolk Southern until the first day of trial. For reasons which follow, we affirm.

1. Norfolk Southern contends that, in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), the manner in which Perkins exercised peremptory challenges against white venirepersons gave rise to an inference of racial discrimination that was not successfully rebutted by Perkins. Norfolk Southern argues that Perkins used all six of his strikes against white potential jurors and that three of these strikes were used for pretextual reasons. The trial court heard argument on the *Batson* motion and ruled that Perkins presented legitimate race-neutral reasons for each of the three strikes challenged by Norfolk Southern. We agree.

"The trial court's decision rests largely upon assessment of the [attorney's] state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous." (Citations and punctuation omitted.) *Moak v. State*, 222 Ga. App. 36, 39 (3) (473 SE2d 576) (1996). See also *Johnson v. State*, 266 Ga. 775, 777 (4) (470 SE2d 637) (1996). Furthermore, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from[,] the opponent of the strike." (Citations and punc-

tuation omitted.) *Whatley v. State*, 266 Ga. 568, 570 (3) (468 SE2d 751) (1996). "*Batson* does not demand that the explanation proffered by [an attorney] be persuasive, or even plausible. A 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." (Citations and punctuation omitted.) *Greene v. State*, 266 Ga. 439, 442 (5) (469 SE2d 129) (1996).

(a) Norfolk Southern first challenges Perkins' strike of juror no. 13, Timothy Perez. Perez stated that he teaches math at Marist High School, a private Catholic school. Perkins' reason for striking Perez was that "[u]nlike the woman who teaches accounting or a job skill, this man works at a very exclusive, very expensive private school that is historically very conservative, in a subject which is conservative. . . . It's a simple matter that I foresee that is a very conservative environment that will color his thought processes." Perkins further argued that "math is not a people subject," and he did not believe Perez would think about human emotions.

Norfolk Southern argues that Perkins' stated reasons were a sham because he failed to strike other venirepersons in the same or similar disciplines as Perez, such as Mitchell (no. 11), Abdul-Rashid (no. 23), Bridges (no. 4) and Harrington (no. 26). It should be noted that Bridges and Harrington are white. We find that Perkins presented rational and legitimate reasons for seating these individuals in lieu of Perez. Mitchell is an accounting and word processing teacher who works at a public school teaching math as both a work life skill and a college preparatory subject. Abdul-Rashid is a government worker, a group which is attractive to plaintiff lawyers,[1] and is voluntarily in a union. Bridges works for a charitable hospital and is conversant with concepts such as present value calculations, which were needed to calculate Perkins' damages. Harrington is also familiar with concepts such as present value calculations.

In this personal injury action, the strike based on Perkins' unfavorable view of individuals teaching subjects which are not people-oriented in a conservative, wealthy environment is a race-neutral reason, and the record does not demonstrate that similarly situated black jurors were not also stricken. Therefore, the trial court's finding that Perkins struck Perez for race-neutral reasons is not clearly erroneous.

(b) Norfolk Southern next challenges Perkins' strike of juror no. 18, Lynda Ramseur. According to Perkins, he struck Ramseur because she lives in a very exclusive zip code, has a husband in management in a large company, and worked in the insurance industry

---

[1] In *Johnson*, supra, not wanting a postal worker on a jury panel was accepted as a valid reason to exercise a peremptory strike.

before becoming a homemaker. "My reason was rich and insurance and known to be from a conservative zip code. . . . [P]eople who have acquired information through the insurance industry, as a general rule, have been poisoned from serving and giving independent evaluations in personal injury claims. The insurance industry is full of literature that they hand out to employees. . . . I don't have any other insurance people on this jury, regardless of race." While Abdul-Rashid and Bridges are from the same "conservative" zip code, as stated previously, Perkins provided legitimate reasons for not striking these jurors.[2]

"Where, as here, multiple racially-neutral reasons are given for the peremptory strike . . ., a *Batson* violation does not exist simply because one or more of those racially-neutral reasons was not used by the [attorney] to strike [black] potential jurors. [Cits.]" *Smith v. State*, 264 Ga. 449, 452 (3) (448 SE2d 179) (1994). Perkins not only gave additional race-neutral reasons besides the zip code for exercising his peremptory strike against Ramseur, but he also articulated race-neutral explanations for not exercising peremptory strikes against Abdul-Rashid and Bridges. The trial court's finding that there was no racial motivation in Perkins' exercise of a peremptory strike against Ramseur is not clearly erroneous.

(c) Norfolk Southern also challenges Perkins' strike of juror no. 21, Connie Yates. Perkins articulated two reasons for striking Yates: she did not respond to questions and was introverted, and she "had to go on a trip also, and I felt that she would hold that against the people who brought her here, that's us." "Perceived inattention, nonresponsiveness, and hostility have been found to be legitimate, racially neutral reasons for striking a prospective juror. [Cits.]" *Moak*, supra at 39. While Norfolk Southern contends there were two other potential jurors chosen who did not respond to questions and at least four others who answered minimal questions, none of the other jurors which Norfolk Southern compares with Yates complained about jury service interfering with a scheduled trip for which a nonrefundable airline ticket had been purchased. The trial court's finding that Perez did not strike Yates for improper racial reasons is not clearly erroneous.

2. In its second enumeration of error, Norfolk Southern contends the trial court erred in excluding reference to Perkins' receipt of railroad retirement benefits. Norfolk Southern argues it should have been permitted to show Perkins' net income as reduced by his railroad retirement taxes. We disagree.

---

[2] Norfolk Southern admitted it would have struck Ramseur if Perkins had not, so it is ironic that it now complains about saving one of its own strikes.

"The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers. The benefits received under such a system of social legislation are not directly attributable to the contributions of the employer so they cannot be considered in mitigation of the damages caused by the employer." (Citations and punctuation omitted.) *CSX Transp. v. Levant*, 200 Ga. App. 856, 859 (3) (410 SE2d 299) (1991), rev'd on other grounds, 262 Ga. 313 (417 SE2d 320) (1992). See also *Southern R. Co. v. Cabe*, 109 Ga. App. 432 (5) (136 SE2d 438) (1964). "Since the railroad retirement taxes would ultimately be paid directly to [Perkins] upon his retirement, we find no error with the trial court's exclusion of this evidence. . . ." *Levant*, 200 Ga. App. at 859-860. We find Norfolk Southern's case law from foreign jurisdictions nonpersuasive and not on point.

3. In its third enumeration of error, Norfolk Southern asserts the trial court erred in overruling its motion for a partial directed verdict based on Perkins' failure to prove the extent of the aggravation of his injuries. We disagree.

A directed verdict is proper only if "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a). "In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the 'any evidence' test. [Cit.]" *Southern R. Co. v. Lawson*, 256 Ga. 798, 799-800 (1) (a) (353 SE2d 491) (1987).

Norfolk Southern argues that Perkins' neck, back and carpal tunnel syndrome were pre-existing conditions which were merely aggravated by his accident. Perkins, however, disputed that these conditions were merely aggravated by his accident and testified that prior to his accident, he was working every day without limitation and without pain. This testimony was corroborated by others who worked with him, all of whom testified that prior to his accident Perkins was in "great shape" and had no limitations.

In addition, doctors who treated Perkins before his accident testified that at no time prior to the accident had Perkins been placed on restrictions or been unable to perform his job due to injuries. The medical testimony further showed that Perkins' need for surgery was consistent with his accident. Dr. Kelly opined that Perkins' inability to return to work was causally related to his accident. While Dr. Kelly testified at one point that he did not know of Perkins' prior injuries, he later clarified that his records showed Perkins had a prior problem with his arm and lower back. Dr. Kelly's testimony, in addition to the other testimony presented at trial, raised a factual question as to whether Perkins' disability was solely the result of his

accident or whether the accident only served to aggravate alleged pre-existing injuries. Thus, "[t]he judge properly left resolution of the question of liability to the jury. [Cits.]" *Colonial Life &c. Ins. Co. v. McClain*, 144 Ga. App. 201, 202-203 (1) (240 SE2d 759) (1977).

4. In its final enumeration of error, Norfolk Southern contends the trial court erred in admitting the testimony of Perkins' economist, Dr. Fred Johnson, because Perkins did not provide his expert's changed opinions to Norfolk Southern until the first day of trial. Norfolk Southern argues that OCGA § 9-11-26 (e) requires a party to amend a discovery response which he knows was incorrect when given or which he knows is no longer true. We review this enumeration of error under the "abuse of discretion" standard. *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 186 (3) (450 SE2d 452) (1994).

According to the record, the parties were discussing Perkins' lost wage estimates on the first day of trial when Norfolk Southern claimed the economists' numbers had been adjusted from previously disclosed figures. Norfolk Southern requested an opportunity to depose Johnson regarding these changes, and the trial judge granted this request. At no time did Norfolk Southern request a continuance to prepare for what it claims was prejudicial surprise.

Pretermitting the question of whether Perkins should have provided amended interrogatory responses at an earlier date, "the proper procedure when [Johnson was] called to testify was not to object to [his] testifying or to the admission of [his] testimony, but to move for a postponement of the trial for a sufficient length of time to enable [Norfolk Southern] to interview [Johnson], check the facts to which [he] would testify, and, if indicated, arrange to secure rebuttal evidence or to impeach [him]." *Nathan v. Duncan*, 113 Ga. App. 630, 641 (7) (149 SE2d 383) (1966). See also *Glover v. Southern Bell Tel. &c. Co.*, 132 Ga. App. 74, 77 (5) (207 SE2d 584) (1974). Where an opportunity to explore the witnesses' testimony is given, a continuance may not even be necessary. *Ellis v. Cameron & Barkley Co.*, 171 Ga. App. 211, 212 (3) (319 SE2d 38) (1984).

As no motion for postponement was made by Norfolk Southern, we cannot find the trial court abused its discretion in refusing to exclude Johnson's testimony. This is especially true in light of the fact that Norfolk Southern was given an opportunity to depose Johnson prior to his testifying at trial and that Norfolk Southern's counsel indicated the situation could be "solved" if Norfolk Southern was given an opportunity to depose Johnson.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

Decided January 28, 1997 —
Reconsideration denied February 11, 1997 — 

*Holland & Knight, Eileen M. Crowley, Tanya M. Lawson, Keith J. Reisman,* for appellant.
*Warshauer & Woodruff, Michael J. Warshauer, Lyle G. Woodruff,* for appellee.