A97A1047, A97A1048. HOLT v. SCOTT; and vice versa.
(487 SE2d 657)

McMURRAY, Presiding Judge.

Plaintiff Zelma Lee Holt brought this tort action against defendant Michael David Scott in the Superior Court of Webster County, Georgia, alleging that while she "was a passenger in a car traveling north on McGarrah Street[, in Americus, Georgia, defendant was also] driving . . . north on McGarrah Street, [and] did not see the taillights of Plaintiff's car and ran into the rear of said vehicle[, whereupon, plaintiff] was thrown to the front of the car and back again with great force, injuring her and inflicting great pain and nervous shock upon her." The complaint alleged that defendant was negligent and negligent per se in failing to keep his vehicle under proper control; failing to keep a proper lookout; failing to exercise ordinary care; and in failing to apply the brakes properly.

Defendant admitted he was driving north on McGarrah Street at the time but denied the material allegations, defending in part on the grounds that plaintiff's injuries were proximately caused by the neg-

ligence of third parties beyond defendant's control or else "were the result of a pure accident." Defendant's motion for a change of venue was granted, and the case was tried before a jury in Sumter County, Georgia. In a general verdict, the jury found for defendant. Plaintiff's motion for new trial was denied, and in Case No. A97A1047, she appeals. In Case No. A97A1048, defendant cross-appeals. *Held*:

## Case No. A97A1047

1. Plaintiff first contends the trial court erred in granting defendant's motion for a change in venue.

This motion was predicated on the following circumstances: Georgia Farm Bureau Mutual Insurance Company ("Georgia Farm Bureau") undertook the defense of the case, and of the 120 Webster County traverse jurors summoned, 68 were policyholders of Georgia Farm Bureau, not counting jurors who were related to policyholders within the prohibited degree. This motion was originally denied, subject to the proviso that, if the parties "[could not] get a jury, then [the court would] consider the change of venue again." Subsequently, after qualifying 120 Webster County venirepersons as to the parties, as to Georgia Farm Bureau policyholders, and those related to policyholders within the prohibited degree, the resulting panel was only "12 jurors that [were] eligible statutorily to serve on this jury." The trial court concluded "it would be cost prohibitive to subpoena or bring in, [an estimated] 200 jurors, for the purposes of selecting a jury on this case." Consequently, the trial court granted defendant's motion for change of venue. Plaintiff urges there is no authority for the trial court to change venue "simply because more jurors than usual would have to be brought in so an impartial jury could be selected[, since that is] routinely done in death penalty cases."

The general rule as to venue is that "civil cases . . . shall be tried in the county where the defendant resides." 1983 Ga. Const., Art. VI, Sec. II, Par. VI. Nevertheless, "The power to change the venue in civil and criminal cases shall be vested in the superior courts to be exercised in such manner as has been, or shall be, provided by law." 1983 Ga. Const., Art. VI, Sec. II, Par. VIII. As provided by law, "[w]henever, by an examination voir dire of the persons whose names are on the jury list and who are compellable to serve on the jury, the presiding judge is satisfied that an impartial jury cannot be obtained in the county where any civil case is pending, the civil case may be transferred to any county that may be agreed upon by the parties or their counsel." OCGA § 9-10-50 (a). If the parties cannot agree, "the judge may select the county in which the same shall be tried and have the case transferred accordingly." OCGA § 9-10-50 (b).

"It is well established in Georgia that the matter of whether a

change of venue is appropriate lies within the sound discretion of the trial court and [the exercise of] this discretion will not be disturbed unless an abuse of this discretion is shown. [Cits.]" *Claxton Poultry Co. v. City of Claxton*, 155 Ga. App. 308, 309 (1), 311 (1) (C) (271 SE2d 227). "If a juror were disqualified by reason of relationship or for other cause, it would be unnecessary to proceed further by putting to [the juror] the voir dire questions." *Alley v. Gormley*, 181 Ga. 650, 652 (1) (183 SE 787). "[I]t is proper to qualify the jurors as to whether any of them are policyholders [of a mutual insurance company such as Georgia Farm Bureau,] or related within the prohibited degree to policyholders." *Weatherbee v. Hutcheson*, 114 Ga. App. 761, 764 (1) (a), 765 (152 SE2d 715). In the case sub judice, the trial court satisfied itself that an impartial jury could not be guaranteed in the county where this civil case was originally pending, after personally examining an estimated 80 or 90 venirepersons as to any relationship to Georgia Farm Bureau and qualifying only 12 jurors for the panel. We find no abuse of discretion in the trial court's reconsideration of the earlier denial of defendant's motion to change venue and its subsequent decision to grant the motion after its futile examination voir dire. Compare *Thompson v. Sawnee Elec. Membership Corp.*, 157 Ga. App. 561, 563 (3) (278 SE2d 143). In *Thompson*, where the trial court in that case had yet to exercise its discretion regarding a proposed change of venue, this Court would not decide as a matter of law "whether a qualified jury can or cannot be chosen from among the 15 percent of the population of Forsyth County who [were] neither members of the appellee[-defendant electric membership corporation] nor closely related to its members." Id.

2. In her third enumeration, plaintiff contends the trial court erred in giving defendant's request to charge on "sudden emergency," arguing there was no evidence to support this jury instruction.

Peggy Lawson, the driver of the vehicle with which defendant collided, testified that, as she was preparing to turn left onto Patton Drive from U. S. 19 North, she came to a "regular stop," and affirmed she "did have [her] left turn signal on." But she came "to a stop at that point in the road . . . [because a] car must have been coming [towards her] [h]eading south on U. S. 19."

Defendant also "was heading up U. S. 19. . . . It was pretty heavy traffic. It was a little after three. . . . School buses were just hitting the roads and it was pretty heavy." Defendant was "about three or four car lengths . . ." behind Peggy Lawson's vehicle, traveling "[s]omewhere in between forty — maybe forty-two and forty-eight or forty-nine miles per hour." Compared to other vehicles, "[they] were all going about the same speed, because it was pretty heavy traffic and it was only a two-lane highway, so nobody could really go faster than the other." Defendant and his then-girlfriend, his wife

now, "were just carrying on a normal conversation. [Defendant] was behind the Plaintiff's car. . . . As [he] was talking to [his] girlfriend, [he] noticed the car put on brakes. [Defendant] never noticed her slowing down or speeding up. When [he] saw her brake lights come on, [he] started slowing down. By the time — by the time — about a second after she put on her brakes, she was at a complete stop, so at that time [defendant] slammed on brakes." According to defendant, the vehicle in front of him "gave no signal . . ." when it began its left turn. Defendant affirmed that when he first saw the brake lights, he "started to slow down, and then . . . saw the car coming up on [him], then . . . slammed [his] brakes down."

" 'The doctrine of sudden emergency refers only to those acts which occur immediately following the apprehension of the danger or crisis and before there is time for careful reflection. (Cit.) The rule of sudden emergency is that one who in a sudden emergency acts according to his best judgment or, because of want of time in which to form a judgment, acts in the most judicious manner, is not chargeable with negligence. (Cits.)' [Cit.] 'An emergency is a "sudden peril caused by circumstances in which the defendant did not participate and which offered him a choice of conduct without time for thought so that negligence in his choice might be attributable not to lack of care but to lack of time to assess the situation." (Cit.)' . . . [Cit.]" *Luke v. Spicer*, 194 Ga. App. 183, 184 (3) (390 SE2d 267).

" 'Whether an emergency existed or not, that issue, like all questions of diligence, negligence, contributory negligence and proximate cause except in plain and indisputable cases, was a question for determination by the jury. Under the evidence presented at trial, we conclude that this issue was properly submitted to the jury.' . . . [Cit.] . . . '[I]t is a well established rule that an instruction is not inapplicable where there is any evidence, however slight, on which to predicate it. (Cit.) It is not even necessary there should be direct evidence going to that point, it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it. (Cit.)' [Cit.]" *Franklin v. Hennrich*, 196 Ga. App. 372, 374 (2) (a), 375 (395 SE2d 859).

This trial court did not commit error in giving the instruction on the doctrine of sudden emergency.

3. Plaintiff is an African-American female. The qualified venire consisted of nine African-Americans and fifteen whites, or 37.5 percent African-American. Defendant, who is a white male, used all six peremptory challenges to remove African-American venirepersons. The petit jury contained three African-American females and no African-American males, that is twenty-five percent African-American. Upon this prima facie showing of discriminatory intent in the use of peremptory challenges, plaintiff objected to four of defendant's six

strikes. Defendant then explained his use of peremptory challenges.

Specifically, juror 12, an African-American female, was struck primarily because she had had back problems. Juror 16, an African-American male, was struck "because he was an employee of the Sumter County Sheriff's Department, and in this case [there was] a former law enforcement officer . . . that [was] a primary liability or negligence witness[; plus all things being equal, the defense] decided to go with older jurors as opposed to younger jurors, and [this juror] fit into the younger category." Juror 21 also "was in the young category." Where this juror is employed, "[t]hey're unionized and tend to be more Plaintiff-oriented for that reason, and there are good many claims out there, Work[ers'] Comp claims. . . ." This juror indicated he had injured his back. Juror 33, an African-American female, "stood up twice and said she thought she remembered [plaintiff] being a co-worker."

In each instance, the trial court determined that the proffered reasons were neutral as to race, gender, and age, and the jury as originally struck was seated over plaintiff's objection. This ruling is enumerated as error.

"[U]nder *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986)[, the] opponent of a [peremptory challenge] has the burden to make out a prima facie case of purposeful discrimination by demonstrating that the totality of the relevant facts gave rise to an inference of discriminatory purpose. Once a prima facie case is established, the proponent of the strike must articulate a race-[or gender-] neutral explanation for striking the [prospective] jurors at issue. The explanation need not be persuasive or even plausible, but only one that does not deny equal protection. However, the ultimate burden of persuasion about the racial motivation rests with and never leaves the opponent of the strike. [Cits.]" *Berry v. State*, 267 Ga. 605, 608 (5) (481 SE2d 203). A trial court's determination of a *Batson* challenge "rests largely upon assessment of the attorney's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous." (Citations and punctuation omitted.) *Norfolk Southern R. Co. v. Perkins*, 224 Ga. App. 552 (1) (481 SE2d 545). "A legitimate reason is not a reason that makes sense, but [is only] a reason that does not deny equal protection." (Citation and punctuation omitted.) Id. at 553.

Here, the defense stated reasons that were all facially race- and gender-neutral. The question then became whether plaintiff carried her burden of proof to show, under the totality of the circumstances, that, despite facially neutral reasons, defendant's peremptory challenges were employed in a manner offensive to equal protection. "Where, as here, multiple racially-neutral reasons are given for the

peremptory strike[s], a *Batson* violation does not exist simply because one or more of those racially-neutral reasons was not used by the attorney to strike . . . potential jurors [of another race or gender]." (Citations and punctuation omitted.) *Norfolk Southern R. Co. v. Perkins*, 224 Ga. App. 552 (1), 554 (1) (b), supra. We hold the trial court in the case sub judice was authorized to conclude plaintiff failed to meet her burden, and further hold plaintiff failed to show on appeal that such determination is clearly erroneous.

### Case No. A97A1048

4. In his answer, defendant's first defense "move[d] to strike summons issued in said case, the same having been issued by a Deputy Clerk of the Superior Court of Muscogee County, Georgia, and for that reason is defective, void, amounts to illegal summons, and this Defendant has therefore not been served with any proper or legal summons, and said proceeding should be dismissed." After a hearing, the trial court struck defendant's First Defense and Second Defense from the pleadings. In Case No. A97A1048, defendant/cross-appellant enumerates this ruling as error.

The trial court determined that the complaint was correctly denominated as being brought in the Superior Court of Webster County, as was the sheriff's entry of service, and the civil action initiation form, whereas the summons was "incorrectly denominated 'Muscogee' County." Although Lorene W. Tindol gave her affidavit that she "was the Deputy Clerk for Webster County, Georgia, on October 14, 1992, and it is [her] signature which appears on the summons," that summons directed defendant to file his answer "with the Clerk of said court," namely the Superior Court of Muscogee County. The trial court characterized this "a scrivener's error," which resulted in no prejudice to defendant because the answer was timely filed in the appropriate court. Also, the trial court accepted an amended summons, issued two years later and served by mail on defense counsel.

"At any time in its discretion and upon such terms as it deems just, the trial court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." OCGA § 9-11-4 (h). In our view, the irregularity whereby the summons, issued by the Webster County Deputy Clerk, erroneously directed defendant to file his answer in the Superior Court of Muscogee County amounted to an amendable defect. See, e.g., *Pearson v. Jones*, 18 Ga. App. 448 (1) (a) (89 SE 536). In the absence of prejudice resulting from reasonable detrimental reliance on such irregularity, we cannot say the trial court abused its discre-

tion in striking defendant's First and Second Defenses.

*Judgments affirmed. Beasley and Smith, JJ., concur.*

DECIDED JUNE 12, 1997 — ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Before Judge Smith.

*Douglas L. Breault*, for appellant.

*Bowles & Bowles, Jesse G. Bowles*, for appellee.