A98A0379. BURTON v. THE STATE.

(504 SE2d 279)

POPE, Presiding Judge.

Defendant Quathro Burton was convicted following a jury trial of the offense of burglary. His motion for new trial was denied, and he filed the present appeal to this Court.

1. Defendant's first enumeration of error, in which he challenges the sufficiency of the evidence to support his conviction, is without merit.

2. Defendant also argues the State failed to show a race neutral reason for striking an African American prospective juror.

"*Purkett v. Elem,* 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995) requires the trial court to establish, on the record, that it has applied a three-part test to a party's claim of discrimination in the use of peremptory strikes. First, the party challenging a strike has the burden of making a prima facie showing of discrimination. The proponent of the strike must then produce an explanation for the strike which is race-neutral and non-discriminatory on its face, but 'is not required to enunciate "an explanation that is persuasive, or even plausible." ' The burden of *proving* that the proffered explanation is merely pretext for discrimination then shifts back to the challenging party." (Citations omitted.) *O'Neal v. State,* 226 Ga. App. 224-225 (482 SE2d 478) (1997).

In this case the State volunteered its reason for striking the juror; thus whether the defendant established a prima facie case of discrimination is moot. See, e.g., *Chunn v. State,* 210 Ga. App. 209, 210 (2) (435 SE2d 728) (1993).

The record shows that the reason the State offered for striking the juror was that she was a member of a particular church. No other juror claimed membership in the church. The prosecutor stated on the record: "Ms. Collins says she goes to Hill Chapel Church. Hill Chapel is one of the churches that were organizing protests about the way the police and the DA's Office were handling the Edward Wright shooting. I don't want anybody that goes to a church that thinks it's their business how the police and the DA's office conduct their busi-

ness to the extent that they'll organize a protest about it on the jury. That's a religious organization, but yet, they will protest the way the police are doing their jobs. I don't want anybody on the jury that is a member of that church." "I don't care if it's a white church, a black church, or a Hispanic church or an Asian church, I don't want anybody who goes to a church that organizes political protests on my jury."

After the State proffered its reason, and the trial court accepted it as race-neutral, the defendant, as the opponent of the strike, was required to show that the State's strikes were racially motivated. The trial court specifically found that the defendant failed to carry this burden. "[T]he ultimate burden of persuasion about the racial motivation rests with and never leaves the opponent of the strike." *Holt v. Scott*, 226 Ga. App. 812, 816 (487 SE2d 657) (1997).

Defendant argues, however, that the trial court erred in finding race-neutral the State's reason for striking the prospective juror. "[C]oncern that a prospective juror is hostile to the State or that a juror will not seriously consider the State's evidence are neutral reasons for a strike." *Jones v. State*, 226 Ga. App. 428, 430 (1) (487 SE2d 62) (1997). Defendant asserts that the State should have further questioned the juror to ascertain whether she had participated in the demonstrations or what her feelings were about the prosecution. But it was the defendant's and not the State's burden to show discriminatory intent, once the State gave its race neutral reason for striking the juror. See *Turner v. State*, 267 Ga. 149, 153 (476 SE2d 252) (1996). "'A trial court's determination of a *Batson* challenge rests largely upon assessment of the attorney's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous.' (Citations and punctuation omitted.) *Holt v. Scott*, 226 Ga. App. 812, 816 (487 SE2d 657) (1997)." *Johnson v. State*, 231 Ga. App. 114, 117 (497 SE2d 666) (1998). "[C]onsidering the totality of the circumstances, including the racial composition of the trial jury . . . we cannot conclude that the trial court's *Batson* ruling was clearly erroneous." *Barnes v. State*, 269 Ga. 345, 350-351 (496 SE2d 674) (1998).

*Judgment affirmed. Andrews, C. J., and Blackburn, J., concur. Eldridge, J., concurs specially. McMurray, P. J., Beasley and Ruffin, JJ., dissent.*

ELDRIDGE, Judge, concurring specially.

I concur only in the judgment of the majority.

Respectfully, I cannot agree with my appellate colleagues' *Batson* analysis which, to me, has had the result of vitiating *Batson/McCollum* challenges in this State.

1. Under the majority's analysis, the *Batson* test is now, in effect, a *four*-step inquiry: (1) A prima facie showing; (2) a facially race-neutral explanation; (3) an independent requirement that the opponent of the strike *prove* that the otherwise race-neutral explanation is *not* really neutral (i.e., proving a negative); and then, (4) the trial court's decision based upon whether the opponent *proved* the race-neutral reason was not really neutral.

Under this model, a trial court commits reversible error if it "collapses the steps" by deciding too soon that an otherwise race-neutral reason is or is not neutral *before* the opponent of the strike "proves" it to the court. See, e.g., *Smith v. State*, 232 Ga. App. 458 (501 SE2d 622) (1998); *Gilbert v. State*, 226 Ga. App. 230 (486 SE2d 48) (1997). However, a review of the decisions of other states shows that Georgia is alone in such interpretation; no other states have reversed based upon a "premature" evaluation of step three.[1] See particularly *People v. Payne*, 666 NE2d 542, 550 (N.Y. 1996). Such review shows that while other states recognize that the "burden of persuasion never leaves the opponent of the strike" pursuant to *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995), that language does not translate into an inquiry independent of steps one and two, but is simply part and parcel of the trial court's step-three evaluation "in light of all relevant circumstances," including the persuasiveness of otherwise race-neutral strikes. *Bruner v. Cawthon*, 681 S2d 161, 171 (Ala. 1995).

Further, in this State, in departure from all other states, we will reverse on appellate review if *we* decide that the opponent of the strike did not sufficiently meet his burden to prove that an otherwise facially race-neutral explanation was not really neutral — *even if we recognize the trial court's basis for deciding contrary to our perceptions*. See *Malone v. State*, 225 Ga. App. 315, 317 (484 SE2d 6) (1997) and *Smith v. State*, supra, reversing the trial court although "it is fairly easy to understand why the trial court found some of the reasons given for the peremptory strikes to be unpersuasive."

To my mind, it is extremely important to realize that the great majority of states have struggled in the "aftermath" of *Purkett*. See, e.g., *Maddox v. State*, 708 S2d 220, 230 (Ala. 1997) (Long, P. J., concurring). The exasperation level is such that some states have simply refused to follow *Purkett*, finding that opinion "a digression" from

---

[1] See, e.g., *State v. Vargas*, 926 P2d 223, 227 (Kan. 1996); *Riley v. Commonwealth*, 464 SE2d 508, 510 (Va. App. 1995); *State v. Best*, 467 SE2d 45, 51 (N.C. 1996); *State v. Murray*, 906 P2d 542, 557 (Ariz. 1995); *People v. Nunn*, 652 NE2d 1146 (Ill. App. 1 Dist. 1995); *Palmer v. State*, 654 NE2d 844 (Ind. App. 1995); *People v. Hope*, 658 NE2d 391 (Ill. 1995); *Thorpe v. State*, 689 NE2d 441 (Ind. 1997); *State v. Robinson*, 662 A2d 1295 (Conn. App. 1995); *State v. Gaitan*, 536 NW2d 11 (Minn. 1995).

prior federal decisions and relying instead on *Batson* protections under state constitutional grounds. See, e.g., *People v. Jamison*, 50 Cal.Rptr.2d 679, 686 (Cal. 1996). However, the majority of states have interpreted the *Purkett* decision as affirming that the "primary determination of whether the [striker] acted with unlawful purpose during jury selection [*is*] *in the hands of the trial judge*," thereby keeping *Batson/McCollum* challenges viable in their respective states. (Emphasis supplied.) *State v. Vargas*, 926 P2d 223, 227 (Kan. 1996). Yet, Georgia, apparently alone, has used the *Purkett* decision to develop a model for *Batson/McCollum* appellate inquiry that appears to me so unclear in its application and results in such *routine* reversal of the trial courts that, in my view, it seems safe to assume that fear of reversal has become a primary motivating factor in most trial court's step-three determinations, thereby rendering *Batson/McCollum* challenges useless in this State.[2]

Certainly neither *Purkett, Batson, McCollum*, nor any other United States Supreme Court case provides a legal basis for such appellate control. Indeed, it is hard to imagine how the Supreme Court could have advised against such micro-management any more strongly than it did in *Purkett* when reversing the Eighth Circuit Court of Appeals for refusing to give deference to the trial courts' step-three credibility determination. And it appears to me that Georgia, especially, cannot afford to permit the de facto disappearance of *Batson* in light of the evils that decision was designed to address. I urge — again — that the model be changed in Georgia so as to give viability to challenges made under *Batson/McCollum*.

In reality, under *Purkett* as interpreted by the majority of states, determining whether "the opponent of the strike met its burden of proving discriminatory intent," is the third step *and does not require proof independent from steps one and two.* As recognized by the majority of states, the trial court's step-three determination is based upon "a variety of factors" as articulated by the United States Supreme Court.[3] *State v. Brooks*, 960 SW2d 479 (Mo. banc 1997). "At the third stage, it becomes the function of the trial court to assess the 'genuineness' of the [striker's] explanation[s] and the credibility of

---

[2] See, e.g., *Jackson v. State*, 265 Ga. 897 (463 SE2d 699) (1995); *Turner v. State*, 267 Ga. 149 (476 SE2d 252) (1996); *Chandler v. State*, 266 Ga. 509 (467 SE2d 562) (1996); *Pickett v. State*, 226 Ga. App. 743 (487 SE2d 653) (1997); *O'Neal v. State*, 226 Ga. App. 224 (482 SE2d 478) (1997); *McKenzie v. State*, 227 Ga. App. 778 (490 SE2d 522) (1997); *Gilbert v. State*, supra; *Smith v. State*, supra.

[3] For example, the trial court's disbelief of the explanations, together with elements of the prima facie case; the trial court's knowledge of the community in relation to the explanations offered; or the trial court's knowledge of the one utilizing the strike in relation to the explanations offered. See *St. Mary's Honor Center v. Hicks*, 509 U. S. 502 (113 SC 2742, 125 LE2d 407) (1993); *Hernandez v. New York*, 500 U. S. 352, 365 (111 SC 1859, 114 LE2d 395) (1991); *Hairston v. Gainesville Sun Publishing Co.*, 9 F3d 913, 914 (11th Cir. 1994).

the [striker] in offering that explanation. It is at the third stage of the analysis, then, that the trial court might find that explanations provided by a prosecutor are pretextual. As the dissent in *Purkett* explains, *Purkett* stands for the proposition that '(a) trial court must accept (the) [race-]neutral explanation unless a separate "step three" inquiry leads to the conclusion that the peremptory challenge was racially motivated.' " (Citations omitted.) *People v. Nunn*, 652 NE2d 1146, 1150 (Ill. App. 1 Dist. 1995). Accordingly, the third step cannot be "collapsed" into the second step by the *trial court*; such "collapse" occurs only in the appellate arena when the appeals court "prematurely" evaluates the striker's step-two explanations (as did the Eighth Circuit Court of Appeals in *Purkett*), rather than deferring to the step-three determination of the trial court as to the explanations.

2. Keeping these principles in mind in this case, the reason articulated by the State for striking Ms. Collins was race-neutral. Further, the prosecutor's race-neutral explanation was clear, certain, and drew on his own and the trial court's knowledge of the community in relation to the specific facts the juror provided on voir dire. Such is completely permissible and provided a sufficient basis for the trial court to overrule the defense's *Batson* motion. *Hernandez v. New York*, 500 U. S. 352, 365 (111 SC 1859, 114 LE2d 395) (1991).

Moreover, the Supreme Court's decision in *Walton v. State*, 267 Ga. 713 (482 SE2d 330) (1997), upon which the dissent relies for a contrary result, does not support the dissent's position.

In *Walton*, the Supreme Court reversed because the *juror* on voir dire did not supply the "connection" that she was related to defense attorney, C. B. King. The juror stated only that she was related to "a defense attorney." The juror's relationship with King was supplied later *by the D.A.*; yet, it was this connection/relationship with King that the D.A. offered as his basis for striking the juror. Thus, whether such relationship/connection in fact existed was not on the record from the juror's own statement so as to support the prosecutor's strike. The Supreme Court did not reverse in *Walton* because the record failed to provide a factual basis to support the prosecutor's antipathy toward King. After all, a striker's reasons may be "silly or superstitious." *Purkett*, supra. The Court reversed in *Walton* because the juror's connection to King was not established factually so as to support striking her based on that connection.[4]

Here, however, the juror on voir dire provided her connection/relationship to the specific church, Hill Chapel Church, which con-

---

[4] The other reason the prosecutor gave for striking the juror, i.e., hostile views regarding a "dual system of justice," was not merely "unsupported" by the record as opined by the dissent; in fact, the record *contradicted* the prosecutor's reason because it showed that "the venireperson specifically disclaimed that position for herself." *Walton*, supra at 719.

nection the D.A. stated was his basis for striking her. Thus, the relationship/connection is on the record from the juror's own statement so as to support the prosecutor's strike. Under *Walton*, the factual basis for the prosecutor's reluctance to put a member of Hill Chapel on the jury need not be on the record for our consideration on appellate review. Again, a striker's reasons may be silly or superstitious; it is the trial court's evaluation thereof that controls based upon a myriad of factors, including knowledge of the community. Id. Under *Walton*, what needs to be on the record is the factual connection between Hill Chapel and the juror so as to support striking her based on that connection. It is on the record in this case, and thus *Walton* is inapplicable.

Here, the State had no burden beyond articulating a reason for striking Ms. Collins which was race-neutral and, *to the trial court*, clear and reasonably specific. The trial court found that the State did so in this case. Burton has not shown that the trial court's credibility determination was clearly erroneous. Accordingly, I concur in the majority's judgment affirming Burton's conviction.

RUFFIN, Judge, dissenting.

The prosecutor based his peremptory challenge of Ms. Collins on her membership in a church whose members protested the way the police were doing their jobs. The trial court found the reason race neutral and ultimately concluded that Burton failed to meet his burden of showing purposeful discrimination. Upon considering the matter with great deference to the trial court's decision, the majority concluded that the decision was not clearly erroneous. Notwithstanding the apparent racial neutrality of the proffered reason, and also with great deference to the trial court, I disagree with the majority that the record supports the court's ultimate conclusion that Burton failed to meet his burden. Accordingly, for reasons which follow, I dissent from the majority's opinion and conclude that Burton is entitled to a new trial.

Although I do not disagree with the majority's rendition of what occurred during voir dire, I note that the *only* question and response concerning Ms. Collins, the church, the activities of its members and her association with the church is as follows: "[ASSISTANT DISTRICT ATTORNEY]: Are you a member of any social or religious organizations? MS. COLLINS: Yes, I belong to Hill Chapel Baptist Church." Based *solely* on this response, the Assistant District Attorney struck Ms. Collins. He explained to the court: "Ms. Collins says she goes to Hill Chapel Church. Hill Chapel is one of the churches that were organizing protests about the way the police and the DA's Office were handling the Edward Wright shooting. I don't want anybody that goes to a church that thinks it's their business how the

police and the DA's office conduct their business to the extent that they'll organize a protest about it on the jury. That's a religious organization, but, yet, they will protest the way the police are doing their jobs. I don't want anybody on the jury that's a member of that church [sic]."

Although in past decisions we have focused primarily on whether a trial judge is authorized to accept a reason as race neutral, we must remain cognizant of the additional requirements that the reason be case-related, clear and reasonably specific. See *Greene v. State*, 266 Ga. 439, 442 (5) (469 SE2d 129) (1996), rev'd on other grounds, 519 U. S. 145 (117 SC 578, 136 LE2d 507) (1996); *Walton v. State*, 267 Ga. 713, 718 (5) (482 SE2d 330) (1997). And, of equal importance, we must keep in mind that a proffered reason can meet these requirements only if it is supported by the record. See id. at 719.

In *Walton*, the State struck a potential African American juror upon finding that she " 'made the statement that she felt like there was a dual system of justice . . . against black people who are tried by the courts in this country. . . .' " Id. at 718. The Assistant District Attorney also recalled that the potential juror was either acquainted with or had a cousin who was acquainted with a local attorney whom the Assistant District Attorney characterized as a litigator who usually made race a prominent defense in his cases. Based on the juror's purported statement and acquaintance with the attorney, the Assistant District Attorney concluded that the juror " 'might, if on this jury, try to even up for past wrongs and straighten the system out by letting these defendants go. . . .' " Id. at 719. In response to questioning by the court, the Assistant District Attorney explained that "he was not striking the woman on account of her race, but 'because of [the attorney she knew] and his appeals.' " Id. Based on these reasons, the trial court overruled the defendant's *Batson* challenge.

On appeal, the Supreme Court found that the proffered reason "cannot fairly be said to be 'case-related, clear and reasonably specific,' [cit.], because it is not supported by the record. All the venireperson said was that she had a cousin in Georgia who was a lawyer. The rest of the lawyer's connections were supplied by counsel for the State and the defense." Id. As for the juror's belief in a dual system of justice, the Court found that this also was supplied by counsel and not supported by the juror's responses during voir dire. Id. Under these circumstances, the Court concluded that "neither of the reasons given for striking that particular venireperson meet[s] the requirement in *Greene*, supra, that they be 'race-neutral, case-related, clear and reasonably specific.' " Id. at 720.

The reason proffered by the State in this case suffers from the same infirmity as those addressed in *Walton*; they are simply not

supported by the record. See id. Rather, like the reasons advanced in *Walton*, they depend exclusively on information supplied by counsel for the State. See id. All Ms. Collins said was that she belonged to Hill Chapel Baptist Church. There was *no* evidence concerning the extent of her relationship with the church, including whether she actively participated in church activities. Furthermore, although one might reasonably infer that she believed in the fundamental *religious* tenets of the church, there is no evidence that the juror even knew of the purported protests, much less that she attended them or subscribed to the *political* beliefs of the protesting church members. Of similar concern, there was no evidence establishing whether a majority of the church members protested or whether only a small faction of congregants held the belief and participated in the protest.

More is required of a party justifying a peremptory strike than was exhibited by the State in this case. In light of the State's purported concerns with Ms. Collins' response that she "belonged" to the church, it is disconcerting that "the prosecutor failed meaningfully to question [her] to elicit answers that might support his suspicions or provide some objective basis for excusal rather than mere speculation." *Ford v. State*, 262 Ga. 558, 560 (3), n. 2 (423 SE2d 245) (1992). In light of the fact that the prosecutor merely ascribed to the potential juror political beliefs supporting his strike without *any* evidence that she actually held those beliefs, I believe the trial court clearly erred in overruling Burton's *Batson* challenge. Consequently, Burton is entitled to a new trial. See *Walton*, supra.

I am authorized to state that McMurray, P. J., and Beasley, J., join in this dissent.

Decided July 15, 1998 — 

*Thurmond, Mathis & Patrick, Adrian L. Patrick*, for appellant.
*Harry N. Gordon, District Attorney, Henry R. Thompson, Assistant District Attorney*, for appellee.