A02A0400. BROWN et al. v. EGLESTON CHILDREN'S HOSPITAL et al.

(564 SE2d 810)

BLACKBURN, Chief Judge.

In this medical malpractice action, Neata and Reginald Brown appeal the denial of their motion for new trial, contending that the trial court erred by rejecting their challenge to the jury composition pursuant to *Batson v. Kentucky*.[1] For the reasons set forth below, we affirm.

---

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

The record shows that the Browns, who are African-Americans, brought this action against Egleston Children's Hospital and two Caucasian physicians for negligent treatment of their son. The jury panel comprised thirteen African-Americans, ten Caucasians, and one prospective juror who was neither African-American nor Caucasian. During jury selection, each side used all of their respective peremptory strikes to remove prospective jurors whose race was different from that of their clients. The final composition of the jury was seven African-Americans and five Caucasians. Following the jury selection, the Browns challenged defense counsel's peremptory strikes, arguing that they were made solely on the basis of race.

In *Edmonson v. Leesville Concrete Co.,*[2] the U. S. Supreme Court extended the decision in *Batson* to civil cases. Parties are forbidden by these cases from striking prospective jurors solely on the basis of race. In a *Batson* challenge, "[t]he trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous." (Punctuation omitted.) *Holt v. Scott.*[3]

*Batson* challenges are analyzed by a three-prong test: (1) the opponent to the peremptory challenge must establish a prima facie case of purposeful discrimination by demonstrating that the totality of the relevant facts gives rise to an inference of discriminatory purpose; (2) the proponent of the challenge is then required to articulate a concrete, tangible, race-neutral rationale for the strike; and (3) the opponent must carry the burden of showing that the rationale is merely a coverup to purposeful racial discrimination. *Purkett v. Elem;*[4] *McKenzie v. State.*[5]

1. During the *Batson* motion, the trial court did not specifically rule that the Browns had made out a prima facie case, but by its actions it acknowledged a prima facie case had been made. The trial court recognized the Browns' assertion that all of defense counsel's peremptory strikes were used to challenge African-Americans and asked the defendant to respond to the Browns' claims of discrimination as to Jurors 1, 2, 5, 7, and 19.

Defense counsel provided the following rationales for these challenges. Juror 1: She was totally unresponsive. She has no children or experience with children. This prospective juror showed a lack of life experiences in response to all questioning. Also she was a postal worker. Juror 2: She had a terrible experience at a hospital emergency room relating to her child "under very and apparently grueling circumstances, some eight hours of what she considered to be either

---

[2] *Edmonson v. Leesville Concrete Co.*, 500 U. S. 614 (111 SC 2077, 114 LE2d 660) (1991).
[3] *Holt v. Scott*, 226 Ga. App. 812, 816 (3) (487 SE2d 657) (1997).
[4] *Purkett v. Elem*, 514 U. S. 765, 767 (115 SC 1769, 131 LE2d 834) (1995).
[5] *McKenzie v. State*, 227 Ga. App. 778 (1) (490 SE2d 522) (1997).

improper or at least politically incorrect questioning from a physician." Juror 5:

> I took Number Five basically because of her absence of responses. And, number two, my personal predilection that . . . anybody that works for the federal government or the United States Postal Service is not the kind of person I want on the jury. And it's a government-like position. They expect lots of perks and benefits. I just simply don't like, in considering damage awards if they reach that far, to have such a worker on this jury.

Juror 7: She was a plaintiff in a lawsuit, and even though she won, she had a bad experience. Juror 19: She had a bad experience with a doctor. She had claims of whether that doctor was competent.

The court provided the Browns' counsel an opportunity to respond to defense counsel's reasons for the strikes. Counsel provided these specific responses for Jurors 1 and 19. Juror 1: The prospective juror was not specifically asked if she had children or where she worked. Employment alone is not a sufficient race-neutral ground. There were other nonAfrican-Americans who had no children that were not stricken. The prospective juror's only individual verbal response was she took a child to the emergency room. Juror 19: Defense counsel was mistaken. She did not verbally respond to a question concerning a bad experience. The prospective juror did respond by raising her hand to a general question of the panel from defense counsel about whether the juror or someone close to them had a bad experience with a doctor or hospital.

Defense counsel made no further response to the Browns' assertions, choosing to rely on his earlier stated reasons. After hearing the argument, the court made an explicit finding on the record that "the reasons stated for the strikes, some more obvious than others, some more compelling than others, each appears to have a race neutral underpinning."

After review, we do not agree that the Browns' arguments were sufficiently persuasive to find that the trial court was clearly erroneous in its determination that the strikes were not pretextual. "The trial court's decision rests largely upon assessment of the attorney's state of mind and credibility; it therefore lies peculiarly within a trial judge's province. The trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous." (Punctuation omitted.) *Norfolk Southern R. Co. v. Perkins*.[6]

---

[6] *Norfolk Southern R. Co. v. Perkins*, 224 Ga. App. 552 (1) (481 SE2d 545) (1997).

As to the Browns' assertions related to Jurors 1 and 5: First, the Browns claim that defense counsel could not gauge responsiveness since he asked either few or no questions of these jurors. However, the record shows that these two jurors were asked a number of questions either generally or individually upon which defense counsel could base his observation. In *Trice v. State*,[7] *Thompson v. State*,[8] and *Evans v. State*,[9] a lack of responsiveness was upheld as a race-neutral challenge. Additionally, unresponsiveness was only one of defense counsel's multiple reasons given for his strike. *Perkins*, supra at 554 (1) (b).

The second claim by the Browns was that employment is not a racially neutral reason for the strike. Government and postal office employment has previously been determined to be a racially neutral rationale. *Gilbert v. State*[10] (postal worker); *Johnson v. State*[11] (same); *Hinson v. State*[12] (government employee).

Lastly, the fact that prospective Juror 1 had no children is racially neutral. *Herrin v. State*.[13] Although the Browns point out that Juror 1 was not asked a specific question about children, the record shows that both parties prior to trial had received copies of the juror questionnaires that included basic information including marital status, number of children, and employer of each juror. Questionnaires are generally used to provide a more efficient and speedy voir dire process. We find no reason why the defense counsel cannot rely on information from the questionnaire. In *Lingo v. State*,[14] the prosecutor used a prospective juror's response to a questionnaire which indicated a "bad check problem" among several reasons for the challenge.

Jurors 2 and 19: We see no error in the trial court's decision that "bad treatment by a hospital or doctor" is a racially neutral reason for striking Jurors 2 and 19 under the facts of this case in which the cause of action concerns negligence in treatment of a child by a hospital and doctors.

The Browns contend that the trial court erred in accepting defense counsel's stated reasons for a challenge to Juror 19 since the information was erroneous. Defense counsel's reasons for striking Juror 19 were that she responded affirmatively that she or a close family member had a bad experience with a hospital or doctor. Fur-

---

[7] *Trice v. State*, 266 Ga. 102, 103 (2) (464 SE2d 205) (1995).

[8] *Thompson v. State*, 194 Ga. App. 163 (2) (390 SE2d 253) (1990).

[9] *Evans v. State*, 183 Ga. App. 436, 439 (3) (359 SE2d 174) (1987).

[10] *Gilbert v. State*, 226 Ga. App. 230, 231 (486 SE2d 48) (1997).

[11] *Johnson v. State*, 266 Ga. 775, 776 (4) (470 SE2d 637) (1996).

[12] *Hinson v. State*, 237 Ga. App. 366, 371 (3) (d) (515 SE2d 203) (1999).

[13] *Herrin v. State*, 221 Ga. App. 356, 358 (471 SE2d 297) (1996).

[14] *Lingo v. State*, 263 Ga. 664, 667 (1) (b) (10) (437 SE2d 463) (1993).

thermore, defense counsel stated that she had "claims of whether her doctor was in fact competent." The voir dire record does not show that there was such an answer. Despite this mistake or embellishment by defense counsel, a peremptory strike, even if it is based upon mistake or ignorance, may still rebut a prima facie showing as long as it is neutral, case-related, and reasonably specific. *McKibbons v. State.*[15]

Juror 7: The Browns' challenge to striking this juror fails since the court could determine that being a plaintiff in a lawsuit was a racially neutral rationale. See *Stephens v. Ivey,*[16] in which being a plaintiff was one of the reasons a juror was struck.

2. The Browns argue that the trial court implied that no harm would have resulted even if the jury challenges were allowed in error because the final jury panel had seven African-Americans. Although the trial court did note for the record that each side struck only members of the opposite race and that the ultimate panel was balanced as to race and gender, it is clear that the trial court did not rely on these panel statistics in its decision. The trial court merely made the statement a part of the record as a convenience to this Court.

3. The Browns contend that there were white prospective jurors similarly situated as the jurors struck (Jurors 1 and 19), who were not challenged, and, therefore, the defense counsel's reasons were merely pretextual. In *Lingo,* supra at 668 (1) (c), our Supreme Court held that where a reason given for striking a black juror is not also used against a white juror, that reason is particularly suspect. The Browns pointed out that besides Juror 1, there were other prospective jurors that indicated they had no children on the questionnaire, and there were other jurors either employed by some type of government agency or with someone in their families so employed. All of the Browns' claims of similarly situated jurors were, in fact, addressed by defense counsel. Defense counsel stated that as to Juror 1, who was struck because she was unresponsive, had no children, and was a postal worker, there were multiple reasons to keep the similar white juror since that juror fit in with the defense's strategy to include persons with children and loyalty to Egleston. The white juror had three children, had lived in DeKalb County many years, and had taken a child to Egleston Hospital. There is no *Batson* violation where multiple racially neutral reasons are given for the defense counsel's peremptory strike and one or more are not used by the defense to strike prospective jurors of another race. *Holt,* supra at 816 (3). Under these circumstances, we cannot say that the trial court clearly erred in finding the defendants' explanations satisfactorily race-neutral.

---

[15] *McKibbons v. State,* 216 Ga. App. 389, 390 (1) (455 SE2d 293) (1995).
[16] *Stephens v. Ivey,* 212 Ga. App. 407, 409 (3) (442 SE2d 248) (1994).

The Browns asserted that like Juror 19, there were two other white persons seated on the jury who indicated they or someone close to them had a bad experience with a doctor or hospital. Defense counsel answered that one of the persons relied upon by the Browns in their analysis was, in fact, a black male, not a white, and provided rationales for why each of the white prospective jurors was chosen instead of the challenged jurors.

For these reasons, we find that the trial court did not err in holding that the Browns failed to meet their burden of proof to show that there was purposeful discrimination as required under the third step of the procedure set forth in *Batson* and, further, failed to show that on appeal the trial court's determination was clearly erroneous. *McKenzie*, supra at 778 (1).

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED APRIL 30, 2002.

*Divida Gude*, for appellants.

*Love, Willingham, Peters, Gilleland & Monyak, Daryll Love, Vicki M. Miller*, for appellees.