A99A1060. CUNNINGHAM v. THE STATE.
A99A1310. BUSSEY v. THE STATE.
(522 SE2d 684)

BARNES, Judge.

A jury convicted Maurice Cunningham and Almondo Bussey of two counts of aggravated sodomy and two counts of aggravated child molestation. After finding the child molestation counts merged with the aggravated sodomy counts, the trial court sentenced each defendant to fifteen years, to serve ten years in prison. The trial court denied their subsequent motions for new trial, and they appeal.

In Case No. A99A1060, Cunningham argues the trial court erred in granting the State's motions in limine to keep out evidence regarding a threatened civil suit and the alleged victim's subsequent delinquency adjudication. For the reasons that follow, we reverse the convictions against Cunningham.

In Case No. A99A1310, Bussey argues the trial court erred in denying his motion to sever his trial from his co-defendant's, in

allowing a redacted version of the co-defendant's statement to be read to the jury, in instructing the jury that consent is not a defense to the charges against him, and in finding the evidence sufficient to sustain his convictions. For the reasons that follow, we also reverse the convictions against Bussey.

Construed to support the verdict, the evidence at trial showed that Cunningham, Bussey, and the victim were all juveniles being held at the DeKalb Regional Youth Detention Center. Cunningham was 14, Bussey was 16, and the victim was 15. The three teenagers shared a room, and in February 1996, the victim reported that Cunningham and Bussey forced him to perform oral sex on them, after which Cunningham anally sodomized him. A subsequent medical examination of the victim found evidence consistent with his allegations of anal sodomy within the previous 24 hours.

### Case No. A99A1060

1. Cunningham asserts he should have been allowed to ask the victim about the ante litem notice his lawyer served on the State of Georgia, which threatened a civil suit against the State as a result of the incidents that underlie this criminal action. At the start of the trial, the State noted that the victim's family contemplated suing the State and moved to "prevent any mention of any lawsuit or financial gain which may result from any civil case associated with this [case]." The State cited no authority for this proposition. Cunningham, however, correctly argued that it was relevant because such evidence "goes to the victim's bias or interest in the case." In response, the State contended that such evidence would not be relevant because the lawsuit would be against the State and not the two defendants. The trial court agreed with the State's argument and granted the motion in limine.

A party is entitled to a "thorough and sifting cross-examination" of the witnesses against him. OCGA § 24-9-64. " 'Evidence tending to show motive is *always* relevant and admissible.' " (Citations omitted; emphasis in original.) *Letlow v. State*, 222 Ga. App. 339, 342 (2) (474 SE2d 211) (1996). Further, a witness's financial interest in the outcome of a trial is always a proper subject for cross-examination. *Claxton Poultry Co. v. City of Claxton*, 155 Ga. App. 308, 312 (3) (271 SE2d 227) (1980).

(a) The State argues first that the trial court did not err in granting the motion in limine because it was the victim's mother rather than the victim who had served the ante litem notice in contemplation of a civil suit. This argument is not supported by the record. After granting the State's motion in limine, the trial court allowed Cunningham's lawyer to state in his place what the evidence would

show. In his proffer of evidence, Cunningham's lawyer stated that the victim, not his mother, had hired a civil lawyer, that the victim was contemplating a lawsuit against the State, and that the victim's lawyer provided the State with an ante litem notice of the victim's contemplated lawsuit. Since the State made no objection to this proffer, no evidence of record supports its argument that the evidence should have been excluded because the ante litem notice was sent on behalf of the victim's mother.

Even if the evidence did show it was the mother's ante litem notice, we would still find no merit in the State's argument because it overlooks the fact that the victim in this case is a minor. In Georgia, lawsuits for personal injuries to a minor are filed on their behalf by a "next friend" who is typically a parent. See OCGA § 9-11-17; *Weldon v. Williams*, 170 Ga. App. 589, 591-592 (3) (317 SE2d 570) (1984).

We have previously found reversible error because the trial court did not allow the defendant to cross-examine the victim's parent about a civil suit filed as a result of the victim's injuries. In *Lloyd v. State*, 40 Ga. App. 230 (149 SE 174) (1929), the victim's parent had filed a civil action arising out of the same incident at issue in the criminal case, and we reversed because the trial court did not allow the defendant to explore that issue. In this case, the victim would have a financial interest in the outcome of any case his mother might bring on his behalf. As a result, we reject the State's argument that a defendant cannot cross-examine a minor about an ante litem notice simply because it was sent by his mother.

(b) We also reject the State's argument that the exclusion was proper because the action would be against the State rather than the defendants. We have consistently held that trial courts should admit evidence of civil cases when they are "based upon the same transaction" as the criminal trial, *Lloyd*, supra, 40 Ga. App. at 231, or "based on the same facts involved in the criminal case." *Boggs v. State*, 195 Ga. App. 605, 606 (394 SE2d 401) (1990). The financial interest of the witness, which provides the basis for the inquiry on cross-examination, is not diminished by the fact that the defendant is someone other than the criminal defendant. Thus, there is no requirement that the defendant in the criminal action must also be a defendant in the civil action.

(c) The fact that the victim served an ante litem notice on the State and had a financial interest as a result of this threatened civil suit, was a proper subject for cross-examination, and the trial court erred in granting the State's motion in limine regarding this subject. We must now consider whether this error was harmless, because the defendant must show harm as well as error to prevail on appeal.

Under the standards set out by the Supreme Court of Georgia, the "highly probable" test makes " 'affirmance conditional on high

probability that error did not affect the judgment. The test compels a judge . . . to go beyond the appearances of the result to an examination of what causal links there may be between error and the judgment.'" *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

The State argues that any error was not harmful because the evidence did not conflict, relying on *Chancellor v. State*, 165 Ga. App. 365, 372 (23) (301 SE2d 294) (1983) and *Carter v. State*, 150 Ga. App. 119 (2) (257 SE2d 11) (1979). The evidence did not conflict, according to the State, because Cunningham and Bussey did not testify. First, the evidence did conflict. The State introduced, through its witness, Cunningham's statement in which he exonerated himself and implicated Bussey.

Second, the State misinterprets our holdings in the cases cited above. Conflicting evidence can be used to demonstrate reversible error; it is not, however, the only way to do so. The real test, as described in *Johnson*, supra, is whether it was highly probable the error affected the judgment.

In considering whether the error was harmful, we note that a defendant's right on cross-examination to discredit the victim's testimony by showing an improper motive has a long history. "To refuse to permit the defendant to show that such is the case is error, and in a close case is ground for a new trial." *Billings v. State*, 8 Ga. App. 672, 673 (2) (70 SE 36) (1911). Further, "[i]n criminal cases, it is reversible error where there is conflicting evidence to refuse to permit the State's witness on cross-examination to testify that he has a damage suit pending based on the same facts involved in the criminal case." (Citation and punctuation omitted.) *Spitzberg v. State*, 233 Ga. App. 848, 849 (1) (506 SE2d 143) (1998); see also *Boggs v. State*, supra, 195 Ga. App. at 606; *Quinn v. State*, 132 Ga. App. 395, 396 (2) (208 SE2d 263) (1974).

Here, the State's case against Cunningham hinged on the victim's credibility. No witnesses came forward. No DNA or other physical evidence linked Cunningham to the assault. Although evidence of physical injury is consistent with the victim's testimony, the physician who examined the victim testified that he relies on what the patient tells him to determine whether the injury is consistent with the history given. The victim did not report the assault until the next morning, even though a guard testified that a monitor in the ceiling of the room allowed the guards to hear what transpired in the room at all times.

Since the victim's credibility was crucial to the State's case against him, Cunningham's defense focused on inconsistencies in his story. By excluding evidence of the threatened civil suit, the trial court took away Cunningham's argument that this threatened lawsuit provided a motive for the victim to fabricate an assault. Under

these circumstances, we cannot hold harmless the trial court's error in excluding evidence of a threatened civil suit involving the same facts as the criminal action.

2. Cunningham also argues that the trial court erred in granting the State's motion in limine to exclude evidence of the victim's delinquency adjudication subsequent to the events at issue here. While he cites to the record when directing this Court to his preservation of error, no such ruling or objection appears on the page cited. Instead, the trial court reserved ruling on the motion before trial. Although it appears the court may have addressed the issue at a bench conference during Cunningham's cross-examination of the victim, that conference and any resulting ruling are not in the record. Therefore, Cunningham has waived the right to argue this issue on appeal. See *Holland v. State*, 176 Ga. App. 343, 344 (3) (335 SE2d 739) (1985).

### Case No. A99A1310

3. Bussey contends the trial court erred in denying his motion to sever his trial from his co-defendant's and in allowing an investigator to read to the jury a redacted version of Cunningham's statement. Bussey sought the severance because he did not want Cunningham's redacted statement to be introduced at his trial.

The State responded to the motion to sever by arguing that "the statement could be redacted and we could use words like some other guy or something generic in place of the name of Mr. Bussey, and that is certainly a procedure which has been approved of by many different courts, including the United States Supreme Court." The trial court denied the motion to sever and allowed the State to introduce the redacted statement.

An investigator with the Georgia Department of Children & Youth Services testified that he recorded a statement from Cunningham two days after the incident, a transcript of which he read to the jury. Before his testimony, the trial court ruled the statement would be admissible if the investigator substituted "another guy" for Bussey's name. The investigator then read Cunningham's statement to the jury, redacting Bussey's name as follows:

[Graves]: All right. Maurice, tell me what happened on Wednesday.
Mr. Cunningham: We was in the room playing. We was playing with [the victim].
Graves: Who was we?
Mr. Cunningham: Me and *another guy*. . . . We was playing with him and *another guy* said [to the victim], "you done got my thing all hard. Now you going to have to do something."

And [the victim] said, "Man, I ain't like that." He said, "If you ain't going to do nothing, I'm going to take your bed." . . . He told him to open his mouth and [the victim] started sucking his thing, man.

. . .

Graves: Did you hear [the victim] when he said he didn't want to do it?
Mr. Cunningham: Yeah.
Graves: What did *another guy* say to him?
Mr. Cunningham: "[Victim], you done got my thing hard. You're going to have to do something to it. And he told him to sit right there and open his mouth. . . ."

Following the lead of the U. S. Supreme Court, the Supreme Court of Georgia has held that

unless the statement is otherwise directly admissible against the defendant, the Confrontation Clause is violated by the admission of a nontestifying co-defendant's statement which inculpates the defendant by referring to the defendant's name or existence, regardless of the existence of limiting instructions. . . . A co-defendant's statement meets the Confrontation Clause's standard for admissibility *when it does not refer to the existence of the defendant* and is accompanied by instructions limiting its use to the case against the confessing co-defendant.

(Emphasis supplied.) *Hanifa v. State*, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998).

Here, we find that Cunningham's statement, even substituting "another guy," clearly inculpated Bussey and its admission violated the rule outlined in *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), and refined in *Richardson v. Marsh*, 481 U. S. 200, 211 (107 SC 1702, 95 LE2d 176) (1987), and *Gray v. Maryland*, 523 U. S. 185 (118 SC 1151, 1155, 140 LE2d 294) (1998). Bussey was the only other defendant, and the victim testified that he was assaulted by Cunningham and Bussey and that only the three of them were in the room when he was assaulted.

In its brief the State points out that this case was tried before *Gray* and *Hanifa* were decided. But this statement was inadmissible even under the rules outlined in *Bruton*, decided as early as 1968. Further, we addressed this precise issue in 1994, holding that "the mere substitution of the phrase 'another person' for [the non-testifying co-defendants'] names did not satisfy *Bruton* because it was apparent to whom the statements were referring." *Kesler v.*

*State*, 215 Ga. App. 553, 555 (1) (451 SE2d 496) (1994), questioned on other grounds, *Hanifa*, supra, 269 Ga. at 803. We note the State cited *Kesler* at trial, but not in its brief. Cunningham's statement only incriminated Bussey and exculpated Cunningham. Admission of the redacted statement into evidence was error. Id.

"To be harmless, a *Bruton* error must be harmless beyond a reasonable doubt. *Schneble v. Florida*, 405 U. S. 427 [(92 SC 1056, 31 LE2d 340)] (1972)." *Munford v. Seay*, 241 Ga. 223, 224 (1) (244 SE2d 857) (1978). "Where overwhelming evidence of a defendant's guilt exists apart from the statement of the co-defendant, then any violation of *Bruton* is harmless beyond a reasonable doubt." *Adorno v. State*, 236 Ga. App. 588, 592 (3) (512 SE2d 703) (1999). In this case, the evidence was not so overwhelming that it rendered the trial court's error harmless. *Hamilton v. State*, 162 Ga. App. 620-621 (1) (292 SE2d 473) (1982). Without the improperly redacted statement of his co-defendant that the investigator read to the jury, the only other evidence against Bussey consisted of the victim's testimony. As discussed previously, the victim's credibility was crucial to the State's case, and Cunningham's statement was the only other evidence that corroborated the victim's version of his assault by Bussey. Under these circumstances, we cannot say the error was harmless and must therefore reverse Bussey's conviction.

4. Bussey also argues that insufficient evidence supports his convictions on the aggravated sodomy and aggravated child molestation charges based on the anal sodomy, because the victim testified that only Cunningham had forced him to submit to anal sex. Because this enumeration is relevant to Bussey's retrial, we will address it. "[O]n appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence." (Citations and punctuation omitted.) *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997).

Bussey makes three arguments in support of this enumeration: (a) he was not a party to the crime; (b) the circumstantial evidence did not exclude every other reasonable hypothesis except his guilt; and (c) he abandoned the crime.

(a) The trial court charged the jury under OCGA § 16-2-20 as follows: "Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime" if he "[i]ntentionally aids or abets in the commission of the crime" or "encourages . . . another to commit the crime." Bussey argues that after the victim performed oral sodomy on him, he went to bed while Cunningham committed anal sodomy, and therefore did nothing to aid, abet or encourage the latter crime.

To the contrary, the evidence showed that Bussey initiated the assault and ordered the victim to perform oral sodomy. When the vic-

tim refused, Bussey knocked him to the floor and threatened to hit him in the face until the victim complied with Bussey's demand to sodomize him orally. Then, Cunningham orally sodomized the victim, said "that wasn't working," and anally sodomized the victim. The defendants worked together to terrorize and assault the victim, and the acts of each are imputed to the other. See *Ward v. State*, 205 Ga. App. 504, 505 (1) (423 SE2d 288) (1992).

(b) Bussey argues that, because the only evidence against him was circumstantial, that evidence was insufficient to exclude every other reasonable hypothesis but his guilt as required by OCGA § 24-4-6. He argues it was possible that he had "no knowledge or participation in an act of any sex between Cunningham" and the victim. However, the State's case against Bussey was not based entirely on circumstantial evidence; it was also based on the victim's testimony that Bussey committed the crimes. The Supreme Court of Georgia illustrated the difference between direct and circumstantial evidence as follows: "Suppose, for example, an eyewitness testified that he saw the defendant commit the crime. There can be no doubt that such testimony is direct evidence because it immediately points to the question at issue — whether the defendant committed the crime." *Stubbs v. State*, 265 Ga. 883, 885 (463 SE2d 686) (1995).

(c) Finally, Bussey argues that insufficient evidence supported the anal sodomy convictions because he abandoned his participation in that act. He argues that he did not restrain or help Cunningham restrain the victim, but went to bed. OCGA § 16-4-5 provides that when conduct would otherwise be a crime, it is a defense that a defendant "abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose." However, "a mere disinterest in the subsequent proceedings inside the [room] which did not constitute a disavowal of the criminal enterprise, especially in light of the fact that the appellant withdrew only as far as the [nearby bed]," does not establish abandonment. *Lobdell v. State*, 256 Ga. 769, 772 (1) (353 SE2d 799) (1987).

We conclude the evidence was sufficient for a rational trier of fact to find Bussey guilty beyond a reasonable doubt of the aggravated sodomy and aggravated child molestation charges that alleged anal sodomy. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. Bussey contends his trial counsel erred in failing to move for a directed verdict of acquittal once the State rested. After Bussey's trial defense counsel filed a motion for new trial, new appellate counsel was appointed at Bussey's request to allow the new counsel to assert claims of ineffectiveness of counsel against the trial defense counsel. The new appellate counsel, however, did not amend the

motion for new trial to assert claims of ineffectiveness of counsel as Bussey requested. Instead, he requested that the trial court rule on the pending motion, and after the motion for new trial was denied, he filed the notice of appeal. Under these facts, Bussey cannot assert his ineffectiveness claim for the first time in this appeal. *Glover v. State*, 266 Ga. 183 (2) (465 SE2d 659) (1996).

6. In his final enumeration of error, Bussey challenges the constitutionality of the statutory framework under which he was charged and convicted. However, trial counsel failed to challenge the statutes' constitutionality below, and therefore this argument is waived. *Morton v. State*, 206 Ga. App. 413, 414 (1) (425 SE2d 336) (1992). Further, as appellant again failed to raise this issue at the earliest opportunity, he cannot now raise it for the first time on appeal. Id.

*Judgments reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 20, 1999.

*Elliott A. Shoenthal*, for appellant (case no. A99A1060).
*James S. Lewis*, for appellant (case no. A99A1310).
*J. Tom Morgan, District Attorney, Robert M. Coker, Barbara B. Conroy, Assistant District Attorneys*, for appellee.