## A00A1766. DEMETRIOS v. THE STATE.
### (541 SE2d 83)

ELDRIDGE, Judge.

A Forsyth County jury found Dr. Abbas Halim Demetrios guilty of two counts of rape, one count of aggravated sexual battery, five counts of sexual battery, six counts of simple battery, and one count of sexual assault by a practitioner of psychotherapy on a patient. These convictions arose as a result of Demetrios' indictment and prosecution for acts he committed against several female patients who sought medical treatment from him. Demetrios appeals, and upon careful review of the voluminous record in this case, we affirm his convictions.

1. In his first three claims of error, Demetrios challenges the sufficiency of the evidence as to (a) Count 3, rape; (b) Count 5, aggravated sexual battery; and (c) Count 6, rape. In that regard,

[o]n appeal the evidence must be viewed in the light most favorable to support the verdict, and [Demetrios] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

(a) Demetrios claims that there was no evidence of force so as to sustain the verdict on Count 3, the forcible rape of victim S. We dis-

---

[1] (Citations and punctuation omitted.) *Phillips v. State*, 242 Ga. App. 404 (530 SE2d 1) (2000).

agree. Victim S. testified that Demetrios gave her an injection of some unknown drug and, thereafter, put her under hypnosis. She testified that, at the time Demetrios raped her, she no longer had control over what was occurring: "I don't know. It was, like, kind of like on a cloud. . . . I don't know how my panties got off, I don't remember that. . . . I don't know. I don't remember when my bra come off. I don't know. . . . I laid there. . . . I didn't want it. . . . It was against my will. . . . I felt it all. But I just, I couldn't do nothing. I just laid there."

> When the victim is physically or mentally unable to give consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force is found in the constructive force, that is, in the use of such force as is necessary to effect the penetration made by the defendant.[2]

Accordingly, the evidence was sufficient to supply the element of constructive force necessary to sustain Demetrios' conviction for the rape of victim S. While Demetrios argues to this Court that victim S. "was not drugged to the point that she could not have made some attempt at preventing the Defendant from engaging in such act had she tried," this was an issue for the jury. They decided the issue adversely to Demetrios. We will not go behind the jury's determination.

(b) Demetrios contends that the evidence was insufficient to sustain his conviction under Count 5, the aggravated sexual battery of victim J. He claims that there was no evidence he penetrated the victim's "sexual organ with his hands and fingers," as alleged in the indictment. We disagree. Victim J. testified that Demetrios was rubbing her body with his hands when "next thing I know he put his hand on my back and then, uh, then he took his other hand and started going up in me with his hands real hard." While victim J. could not clearly see Demetrios' hand, she testified that "as far as I could see it was his hand." This evidence, coupled with evidence that Demetrios was rubbing the victim's body with only his hands just prior to the sexual assault and had nothing in his hands just after the assault, provides sufficient evidence for a reasonable jury to conclude that Demetrios committed the act as alleged in the indictment.

(c) Demetrios contends that the evidence was insufficient to sustain his conviction under Count 6, the rape of victim K. He argues that, because the jury acquitted him on five other counts of rape he allegedly committed against victim K., the jury could not have found

---

[2] *Drake v. State*, 239 Ga. 232, 234-235 (236 SE2d 748) (1977), reaff'd, *State v. Collins*, 270 Ga. 42 (508 SE2d 390) (1998).

victim K.'s testimony credible enough to support conviction on any rape count. However, the question of victim K.'s credibility was for the jury to decide. She testified as to numerous acts Demetrios allegedly committed against her, and the jury was entitled to believe her testimony in full or in part.[3] Moreover, one act of rape is not legally included in another, separate act of rape so as to require reversal under a "conflict" theory.[4]

2. In his fifth enumeration of error, Demetrios contends that the State failed to exercise its peremptory strikes in a gender-neutral fashion against male prospective jurors because the State struck prospective male juror Charles White.

> Claims that jury strikes were based on gender are reviewed under the same standards as apply to race. *Batson* directs a three-step process for evaluating a claim of gender discrimination in the State's use of peremptory jury strikes: (1) the defendant must make a prima facie showing that the prosecution has exercised its peremptory challenges on the basis of gender; (2) the burden then shifts to the prosecutor to articulate a gender-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. The explanation need not justify a challenge for cause, but it must be neutral, related to the case to be tried, and constitute a clear and reasonably specific legitimate reason or reasons.[5]

Here, the trial court did not determine whether a prima facie case had been made out. Nor did the court opt to require the State to offer its reason for striking White. Step one of the three-step inquiry was skipped entirely without comment, and, at defense counsel's behest, the prosecutor sua sponte volunteered an explanation for the strike. Thus, we will review the prima facie showing by Demetrios as part of our overall review of the record.[6]

In this case, the State used three strikes against males and three strikes against females. The defense struck four males. The jury was composed of seven males and five females. Accordingly, there is no prima facie evidence of discrimination against male prospective

---

[3] *Cowart v. State*, 177 Ga. App. 107 (338 SE2d 534) (1985).

[4] Id. at 108.

[5] (Citations and punctuation omitted.) *Odom v. State*, 241 Ga. App. 361 (2) (526 SE2d 646) (1999).

[6] *Holsey v. State*, 271 Ga. 856, 859 (4) (524 SE2d 473) (1999) (when trial court simply "assume[s]" that [defendant] made a prima facie case of discriminatory intent," review of prima facie statistics may be part of *Batson* review of record).

jurors in the State's use of its strikes.[7]

Further, the prosecutor explained that prospective juror White appeared hostile to the State and unresponsive to her on voir dire; these are neutral reasons for the exercise of a peremptory strike.[8] "Based on the explanations presented by the state and based upon our review of the record, we conclude that the trial court did not err in finding that [Demetrios] has failed to carry his burden of persuasion as to his allegation of discriminatory intent."[9]

Demetrios also contends that the trial court did not follow the proper three-step procedure because the court accepted the State's explanations as neutral *before* hearing additional defense argument. However, "once an explanation for the strike has been proffered, the inquiry is properly framed for the trial court's determination."[10] Thereafter, Demetrios was permitted to present additional argument. That such argument did not move/persuade the trial court from its initial gender-neutral assessment does not require reversal. The trial court's finding of neutrality is supported by the record and is not clearly erroneous. There is no error.

3. Victim D. testified on cross-examination that she had not spoken to her attorney about filing a civil suit against Demetrios. Thereafter, the trial court refused to permit defense counsel to further inquire of the victim whether she intended to sue Demetrios in the future. There was no error in this ruling. The cases relied upon by Demetrios are inapposite and deal with the right to cross-examine a witness regarding a *pending* civil suit in order to demonstrate the witness' interest in the outcome of the criminal case.[11]

Further, we know of no authority, nor has any been cited, that would permit cross-examination regarding a nonexistent civil suit without any factual basis for such cross-examination. This case stands in stark contrast to our decision in *Cunningham v. State*,[12] wherein the victim's family had filed an ante litem notice threatening civil suit based on the underlying criminal acts, and the State acknowledged that the victim's family contemplated such suit; these facts provided a legitimate basis for cross-examination questions regarding the victim's financial interest in the outcome of the criminal trial.[13] Here, however, when asked by Demetrios, "Did you speak

---

[7] *Livingston v. State*, 271 Ga. 714, 717 (2) (524 SE2d 222) (1999).

[8] *Jones v. State*, 226 Ga. App. 428, 430 (1) (487 SE2d 62) (1997).

[9] *Holsey v. State*, supra at 860.

[10] (Punctuation omitted.) *Johnson v. State*, 231 Ga. App. 114, 116-117 (497 SE2d 666) (1998). See also *Greene v. State*, 266 Ga. 439, 443 (469 SE2d 129) (1996), rev'd on other grounds, *Greene v. Georgia*, 519 U. S. 145 (117 SC 578, 136 LE2d 507) (1996).

[11] Compare *Boggs v. State*, 195 Ga. App. 605, 606 (394 SE2d 401) (1990).

[12] 240 Ga. App. 92, 93-94 (522 SE2d 684) (1999).

[13] Id. at 94.

to your attorney about suing Dr. Demetrios," the victim replied, "No." When Demetrios asked, "Is it your intent to sue Dr. Demetrios," the trial court sustained the State's objection. Defense counsel made no factual proffer for his question and, in fact, simply stated "I have no further questions."[14] The scope of cross-examination is within the sound discretion of the trial court and, in the absence of an abuse thereof, will not be disturbed by this Court.[15] Here, we find no abuse of discretion.

4. Demetrios next claims error in the sentencing hearing because the trial court permitted the State to offer evidence of Demetrios' violent conduct at the jail, when notice of the State's intent to use such evidence was not served prior to trial per the requirement of OCGA § 17-10-2 (a).[16] We disagree.

The notice requirement of OCGA § 17-10-2 (a) goes to the State's use of a defendant's prior *convictions* in aggravation of sentence:

> [t]he purpose of § 17-10-2 is to give defendant a chance to examine his record to determine if the convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during the pre-sentencing phase of the trial.[17]

The statute was not intended to preclude a trial court from considering a defendant's violent conduct which occurred during trial or, as in this case, after trial and prior to sentencing: "a defendant's character in general, and his conduct while in prison, are relevant to the question of sentence."[18] If such conduct/evidence is "relevant to the question of sentence," the fact that it occurs after trial does not make it any less relevant, even though pretrial notice under OCGA § 17-10-2 is rendered impossible. That a defendant should receive a "windfall"

---

[14] In his brief, Demetrios attempts to put forward a factual foundation for his question by reference to civil lawsuits filed against Demetrios by other, unrelated victims in this case. However, no evidence was submitted regarding these purported facts, either at trial or motion for new trial. "It is an ancient and honored tenet of law that we do not take evidence from the briefs of parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court." (Citation omitted.) *Farmer v. State*, 216 Ga. App. 515, 522 (455 SE2d 297) (1995).

[15] *Hamilton v. State*, 238 Ga. App. 320, 321 (2) (517 SE2d 118) (1999).

[16] Demetrios assaulted a guard at the jail on November 9, 1994, approximately six weeks after trial. Defense counsel was notified immediately that the State intended to introduce such conduct in aggravation of sentence. Written notice was received by Demetrios on November 18, 1994, four days prior to the sentencing hearing.

[17] (Citations and punctuation omitted.) *Armstrong v. State*, 264 Ga. 237 (2) (442 SE2d 759) (1994); *Hatcher v. State*, 224 Ga. App. 747, 750 (2) (a) (482 SE2d 443) (1997).

[18] *Fugitt v. State*, 256 Ga. 292, 296 (348 SE2d 451) (1986); *Hicks v. State*, 256 Ga. 715, 727-728 (352 SE2d 762) (1987). Compare *Terrell v. State*, 271 Ga. 783, 788 (12) (523 SE2d 294) (1999).

due to the timing of his violent misconduct makes little sense, since the purpose of the statute is not directed to such conduct in the first place.

However, we need not decide this issue based on the foregoing. In fact, while the trial court heard the contested evidence, the court also heard victim impact evidence from numerous female victims. In addition, at the time of sentencing and despite the overwhelming evidence in this case, Demetrios informed the trial court, "Judge, you are sentencing an innocent man to prison. May God have mercy on your soul." Although life imprisonment is the maximum sentence for rape, the trial court sentenced Demetrios to twenty years on each of the two rape convictions and twenty years, serve ten — balance probated, on his conviction for aggravated sexual battery. The remaining counts were probated. The trial court gave as its specific reasons for imposition of punishment that

> the Court feels that this sentence, the sentence imposed is appropriate based upon the facts of the case and the use of the doctor/patient relationship and the vulnerability of the victims in the commissions of the crimes charged, as well as the impact upon the lives of these victims. Further, the Court finds the sentence is appropriate based upon a need to protect society and the class of victims involved in these crimes. Further, the Court finds that your refusal to acknowledge or accept the jury's verdict of guilty is [lacking] the first step in successful rehabilitation. And that will be the sentence of the court.

While evidence of the jailhouse assault was before the trial court, the court's *express* reasons for imposing sentence did not include such evidence. In order for alleged error to be grounds for reversal, an appellant must show harm as well as error. Demetrios can show no harm, even if error existed.[19]

5. In his eighth enumeration of error, Demetrios contends that the State improperly injected his character into evidence by questioning him on cross-examination about allegations he stole medication from a hospital with which he was formerly employed. We find no basis for reversal on this ground.

The State's question was directed to impeaching Demetrios' testimony that he had not been asked to resign from his prior employment. Defense counsel objected. At a bench conference, the prosecu-

---

[19] *Wakily v. State*, 225 Ga. App. 56, 61 (10) (483 SE2d 313) (1997); *In re Booker*, 195 Ga. App. 561, 564 (5) (394 SE2d 791) (1990); *King v. State*, 194 Ga. App. 69, 71 (5) (389 SE2d 500) (1989). See also *Williams v. State*, 271 Ga. 686 (523 SE2d 857) (1999).

tor proffered the information that Demetrios' prior employer, Ned Miller, had told her that Demetrios was terminated because he stole pain medication. Defense counsel rejoined, "I don't have a problem with that, Judge. If she can put Ned up, she can go for it." Sustaining the objection, the trial court would not permit the prosecutor to question Demetrios regarding his prior employment unless Miller was called for impeachment purposes. Since Miller resided in California and was unavailable to testify, the prosecutor moved on. Demetrios registered no further objection, nor was any further relief requested. When an appellant could have tendered a timely motion for mistrial or requested additional relief but declined to do so, we generally will not grant more appellate relief than that actually prayed for at trial.[20]

6. We find no error in the trial court's denial of Demetrios' demurrer to those counts of the indictment which do not list a date specific on which the charged crime was committed but, instead, assert that the offense was committed between two specific dates, not more than four months apart.

> [W]here the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it may be proved as of any time within the statute of limitations, as long as the defendant is not surprised or prejudiced by presentation of evidence that the offenses occurred at a time substantially different from that alleged in the indictment.[21]

Here, Demetrios contends only that the failure to list a specific date on which the offense was committed "prevented him from being able to adequately prepare a defense." However, such bare assertion does not establish prejudice or surprise.[22] In this case, the indictment stated the offenses and the dates with sufficient certainty to allow Demetrios to prepare his defense and to protect against double jeopardy concerns.

Further, contrary to appellant's argument, our decision in *State v. Stamey*[23] does not require a different result. In *State v. Stamey*, we reversed when an indictment for theft by taking failed to state either the day or the month within a 53-week period during which the goods

---

[20] *Smith v. State*, 210 Ga. App. 451 (2) (436 SE2d 562) (1993).

[21] (Citations and punctuation omitted.) *Davidson v. State*, 231 Ga. App. 605, 608 (499 SE2d 697) (1998).

[22] Id.

[23] 211 Ga. App. 837 (440 SE2d 725) (1994), overruled on other grounds, *State v. Forthe*, 237 Ga. App. 134 (514 SE2d 890) (1999).

were alleged to have been taken.[24] Clearly, as in this case, listing two specific, close-in-time dates — including the day, month, and year — between which the charged offense occurred does not implicate our decision in *Stamey*.

7. In his last three enumerations of error, Demetrios claims he received ineffective assistance of counsel during trial. In order to prevail on his claim of ineffective assistance of trial counsel, Demetrios must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). He must overcome the strong presumption that counsel's performance fell within a broad range of reasonable professional conduct and must show that there is a reasonable probability that, absent counsel's deficiency, the result of the trial would have been different.[25] Here, this burden has not been met.

(a) Demetrios contends that his trial attorney was ineffective for failing to object to testimony from a jail intake officer that, after Demetrios' initial arrest in December 1993 and during the dress-out process when Demetrios exchanged his street clothes for prison garb, Demetrios was wearing colorful men's bikini underwear.[26] The basis for this claim of error is the fact that, pursuant to motion, the trial court suppressed admission/reference to the same bikini underwear found as a result of a warrantless, February 1994 search of Demetrios' jail locker. However, we find no basis for objection by defense counsel. Pretermitting whether the motion to suppress was providently granted, the intake officer's observation of Demetrios' underwear occurred months before the allegedly unauthorized search and was completely independent thereof. Without any causal connection, the intake officer's observation/testimony was not "tainted" by the search, and the trial court's order on the motion to suppress did not go to such testimony.[27] "Failure to make a meritless objection cannot be evidence of ineffective assistance."[28]

(b) Demetrios next contends that his trial attorney was ineffective for failing to claim a fatal variance between the allegata and probata under Count 4 of the indictment, the rape of victim B.[29] He

---

[24] *Johnson v. State*, 233 Ga. App. 450, 451 (2) (504 SE2d 290) (1998).

[25] *Cross v. State*, 271 Ga. 427, 430-432 (3) (520 SE2d 457) (1999).

[26] Two of the victims had previously testified that Demetrios was wearing brightly colored men's bikini underwear at the time of his improper sexual acts.

[27] See *Nix v. Williams*, 467 U. S. 431, 444, 448 (104 SC 2501, 81 LE2d 377) (1984); *Delay v. State*, 258 Ga. 229, 231 (3) (367 SE2d 806) (1988); *Barnett v. State*, 204 Ga. App. 491, 494 (420 SE2d 43) (1992); compare *Mack v. State*, 189 Ga. App. 261, 262 (1) (375 SE2d 458) (1988) (independent source rule).

[28] *Hayes v. State*, 262 Ga. 881, 884-885 (426 SE2d 886) (1993).

[29] In this enumeration of error, Demetrios makes the same claim with regard to Count 5, the aggravated sexual battery of victim B. However, he fails to support such claim, since

claims inadmissible testimony from the victim that Demetrios also touched her breast and vagina with his hands permitted the jury to use improper evidence to find Demetrios guilty of the lesser offense of sexual battery under Count 4 in a manner that differed from the act as alleged in the indictment. However, we see no basis for a fatal variance objection. Sexual battery is a lesser included offense of rape as alleged under Count 4 of the indictment.[30] Victim B.'s testimony that, without her consent, Demetrios deliberately touched her vagina with his penis supports the jury's verdict of guilty on the lesser included offense of sexual battery under Count 4. Demetrios' hypothesis that the jury used testimony regarding other types of touching to support its verdict under Count 4 is unsupported speculation and contrary to the trial court's instruction to the jury that they must find Demetrios guilty of the offense as charged in the indictment.[31] Since the evidence supports the lesser included offense under Count 4, there is no "fatal variance." And the "[f]ailure to make a meritless objection cannot be evidence of ineffective assistance."[32]

(c) There is also no merit to Demetrios' contention that his trial counsel was ineffective for failing to object to testimony from victim K. that she had repeatedly suffered physical abuse from other men in her life and had come to expect abuse from men. As recognized by Demetrios' trial counsel, this testimony was relevant to explain victim K.'s return visits to Demetrios' office, although she had already been sexually abused by him. Contrary to appellant's argument, the Rape Shield statute, OCGA § 24-2-3, is not implicated since the testimony was regarding prior physical abuse, not sexual abuse. Further, the Rape Shield statute "is a strong legislative attempt to protect the victim-prosecutrix in rape cases,"[33] and cannot be invoked by a defendant to prevent a victim from offering otherwise relevant evidence.

Moreover, Demetrios' attempt to demonstrate prejudice by

---

his argument is directed solely to an alleged variance between the allegations of rape under Count 4 and the evidence sustaining the jury's sexual battery verdict thereon.

[30] "A person commits the offense of sexual battery when he intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." OCGA § 16-6-22.1 (b). The offense of sexual battery is included in the offense of rape as a lesser offense without the additional elements of force and penetration. OCGA §§ 16-6-1 (a); 16-1-6 (1). See also *Heard v. State*, 236 Ga. App. 47 (510 SE2d 900) (1999).

[31] Victim B.'s testimony that during the course of the indicted act of rape, Demetrios also touched her breasts and vagina with his hands was not improper. Such was part of the res gestae of the crime and was admissible. See generally Green, Ga. Law of Evidence, §§ 289-298 (2nd ed. 1983) (Res gestae is the circumstances, acts, and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character.).

[32] *Hayes v. State*, supra at 884-885.

[33] (Citation omitted.) *Banks v. State*, 230 Ga. App. 258, 259 (2) (495 SE2d 887) (1998).

asserting that such testimony "created tremendous sympathy for victim [K.]" which impacted the verdict is contradicted by the fact that the jury acquitted Demetrios on five of the counts involving victim K. and found him guilty of lesser, misdemeanor offenses on two of the counts involving victim K. Accordingly, Demetrios has failed to carry the prejudice prong of his claim.[34]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 24, 2000 — 

*Drew Findling, Cris E. Schneider,* for appellant.
*Philip C. Smith, District Attorney,* for appellee.

